IRVING M. SAPSON, PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 695–66.    Filed March 15, 1968.

Irving M. Sapson, pro se.
*Daniel A. Taylor, Jr.,* for the respondent.

638

OPINION

Petitioner's contention appears to be that San Antonio was, during the years here in issue and had been for many years prior thereto, his principal place of business or post of duty, and that for that reason it was his "home" within the meaning of section 162(a)(2). Petitioner, from his statements at the trial, apparently had the understanding that respondent took the position that regardless of the fact that he had a principal place of employment or post of duty in San Antonio, he would not be entitled to deduct traveling expenses while away from San Antonio unless he was able to show that he also maintained a permanent residence in San Antonio. With this view petitioner di-

rected his attention toward proof that he did have a permanent residence in San Antonio during the 2 years here in issue.

From respondent's opening statement, as well as his brief, he does apparently take the position which petitioner understood him to take. Respondent's counsel at the trial stated respondent's position to be as follows:

During the years involved, the Petitioner was a traveling salesman employed by the Sol Frank Company of San Antonio, Texas. On his returns for the years before the Court, the Petitioner deducted expenses for meals and lodging while traveling away from home on business. The Respondent disallowed the deductions on the grounds that the Petitioner had no home from which he could be away while he traveled.

Not only did respondent not deny in his opening statement that San Antonio was the principal place of employment or post of duty of petitioner, but in his brief he contends that unless a taxpayer has a personal residence he is not entitled to deduct traveling expenses away from his principal place of employment or post of duty. Respondent in his brief states the specific question in this case to be "whether the petitioner paid rent to his sister for the use of a bedroom in her residence and, if so, whether the rental of the bedroom was sufficient to establish San Antonio as petitioner's home within the meaning of Section 162(a)(2) of the 1954 Code." Respondent in his brief makes the following statement concerning petitioner's position in this case:

This Court has had many occasions to define the word "home" within the meaning of Section 162(a)(2) of the Internal Revenue Code of 1954 and Section 23(a)(1), its counterpart in the Internal Revenue Code of 1939. As a general rule, the word "home" means the taxpayer's principal place of business or post of employment rather than the taxpayer's place of residence. *Floyd Garlock,* 34 T.C. 611 (1960), and the cases cited therein, and *Ray A. Smith,* 33 T.C. 1059 (1960) noting with approval Rev. Rul. 54-497, C.B. 1954-2, 75. To assist the public, the Internal Revenue Service issued IRS Publication No. 300 (1956) 672 CCH par. 1350.1433 setting forth the rules on the deductibility of travel and transportation expenses. Petitioner strongly relies on this publication in support of his position. The portion thereof believed to be specifically relied upon by the petitioner is quoted below:

"Traveling Expenses Away From Home

\*        \*        \*        \*        \*        \*        \*

"The term 'home,' to the individual, ordinarily means the place where he and his family live. The term has a different meaning, however, for the purpose of deducting traveling expenses. Your 'home,' for this purpose, is your place of business, employment, station, or post of duty, regardless of where you maintain your family residence. Thus, there may be instances in which you are 'traveling away from home' even while working in the same city in which you and your family live.

"The term 'home' is not limited to a particular building or property, but includes the entire city or general area in which your business premises or place of employment is located."

Respondent submits that IRS Publication No. 300 (1956) is based upon the tacit assumption that the taxpayer has a personal residence. The publication

makes no attempt to discuss the deductibility of traveling expenses incurred by taxpayers who are in a constant travel status and have no personal residence. The quoted portion of the publication is merely to distinguish the place of a taxpayer's residence from the place of his employment. The latter is considered as the taxpayer's home within the meaning of the statute in order to prevent a taxpayer from deducting expenses at the location of his employment as an expense paid while traveling away from his residence. See *Commissioner* v. *Flowers*, 326 U.S. 465, 34 AFTR 301 (1946) construing Section 23(a)(1) of the Internal Revenue Code of 1939. Respondent submits that IRS Publication No. 300 (1956) has no application to cases, including the instant case, where the taxpayer maintains no personal residence. See *James* v. *United States*, 308 F. 2d 204, 10 AFTR 2d 5627, (9th Cir. 1962).

After the statement above quoted, respondent proceeds to argue on a factual basis that petitioner has failed to show that he paid rent to his sister for the use of a bedroom in her residence, or if he did, that the amount was sufficiently substantial to establish this room in his sister's home as petitioner's personal residence in San Antonio, Tex.

In addition to the case of *James* v. *United States*, 308 F. 2d 204 (C.A. 9, 1962), respondent relies on *Henry C. Deneke*, 42 T.C. 981 (1964), and *Wilson John Fisher*, 23 T.C. 218 (1954), affd. 230 F. 2d 79 (C.A. 7, 1956). Respondent states that each of these cases stands for the proposition that a taxpayer is not entitled to deduct traveling expenses unless he can show that he has "substantial continuing living expenses at a permanent place of residence."

The cases cited by respondent and certain other cases of similar import discuss the underlying reason for the enactment of the provision of the Code "permitting deduction by a taxpayer of traveling expenses while away from home in the pursuit of a trade or business." These cases as well as numerous other cases recognize that the allowance of this deduction was primarily for the purpose of compensating a person who is required to travel in his business for the duplication of costs incurred in traveling while maintaining a permanent residence at one specific location. However, in each of the cases relied on by respondent, as well as the other cases which we have found dealing with the question of whether a taxpayer has any permanent personal residence, the taxpayer involved has had no principal place of business. In fact, the taxpayers in these cases have been referred to as "carrying their tax homes on their backs." *Kenneth H. Hicks*, 47 T.C. 71 (1966), involved a taxpayer employed by a company with a home office in Hickory, N.C., who claimed that he maintained a home in Paragould, Ark., because that was the home of his parents, his permanent mailing address, the place where he paid his automobile license fees and taxes, and reported to the Draft Board. He also contributed $100 a year toward the expense of maintaining the residence of his parents in Paragould, Ark. In *Kenneth H. Hicks*, *supra*, in discussing the case of *Charles G. Gustafson*, 3 T.C. 998 (1944), on which the

taxpayer (Hicks) relied, we quoted from pages 999 and 1,000 of the *Gustafson* opinion, the first sentence of the quoted portion being as follows:

We think, however, that the evidence adequately shows that the petitioner, although traveling fifty-two weeks of the year, has his home with his sister in Iowa and that his "home office" is in Des Moines, to both of which he returns for home or business reasons, and that his traveling expenses are exactly within the statutory description.

The facts in the *Gustafson* case showed that the taxpayer claimed as his home the residence of his sister in Greenville, Iowa, and that the taxpayer's "headquarters" were at the corporation's home office in Des Moines. In a dissenting opinion, it was pointed out that Greenville, Iowa, is about 300 miles from Des Moines. If the rationale of the *Gustafson* case was that petitioner's "tax home" was in Des Moines where his headquarters were located, it was not specifically so stated. However, in distinguishing the case of *Charles E. Duncan*, 17 B.T.A. 1088 (1929), affirmed per curiam 47 F. 2d 1082 (C.A. 2, 1931), it was pointed out in the *Gustafson* case that the holding in *Charles E. Duncan* was based on the following proposition:

it was not intended to allow deduction of such expenses [traveling expenses while away from home in the pursuit of a trade or business] by one who maintained no permanent home, no definite headquarters, and traveled on a roving commission with headquarters wherever he happened to be. This does not fit the present case, in which the taxpayer has established that he had a home and that the expenses in question were paid while traveling in the pursuit of his business. See also *Joseph W. Powell*, 34 B.T.A. 655, 658; *Harry F. Schurer*, 3 T.C. 544. * * *

The case of *Harry F. Schurer*, 3 T.C. 544 (1944), to which reference was made in the *Gustafson* case involved a journeyman plumber who maintained a residence in Pittsburgh, Pa., and accepted temporary employment at various other towns in Pennsylvania, Maryland, and West Virginia, at which he incurred expenses for meals and lodging. In the *Schurer* case we held that because of the temporary nature of the taxpayer's employment at the various locations outside of Pittsburgh, Pa., he was entitled to deduct his expenses for meals and lodging while pursuing his trade at these locations. We pointed out that respondent's position appeared to be that while the taxpayer was on these various assignments outside of Pittsburgh his "home" or "post of duty" was at the actual place of employment.

Other cases have likewise dealt with the question of a particular taxpayer's principal place of employment. See, for instance, *Alois Joseph Weidekamp*, 29 T.C. 16 (1957), and *Burns* v. *Gray*, 287 F. 2d 698 (C.A. 6, 1961), both of which involved racetrack employees who worked at various racetracks. In the *Weidekamp* case we pointed out that while the taxpayer spent only 38 days of his total 331 working

days in each of the years involved in Kentucky, he regarded his mother's home in Louisville as his home and expended money for maintenance and real estate taxes on this home and for the support of his mother. In the *Weidekamp* case the question was stated to be "whether the petitioner's home was in Louisville, where he maintained his residence and where he spent about 72 days, including 38 days working, or was it in West Palm Beach, where he was employed for about 4 months in each year."

The case of *Burns* v. *Gray, supra,* likewise concluded that for tax purposes the place where the taxpayer maintained his actual home was his tax home even though he may have spent more days at other racetracks than the racetrack nearest to the home which he maintained for his wife and her parents in which he resided when he was working at racetracks sufficiently near to that home.

In the instant case San Antonio appears to be petitioner's headquarters. San Antonio was the location of petitioner's employer's offices. Any time petitioner was not traveling he spent in San Antonio. In some years prior to the years here in issue he had spent as much as 6 months of the year in San Antonio. Petitioner testified that he was selling military uniforms "out of San Antonio." Respondent recognizes in his argument in this case that San Antonio was petitioner's headquarters. Whether San Antonio was petitioner's "post of duty" or "principal place of business," is not the issue raised in this case. Respondent's position here is not that San Antonio was not petitioner's "post of duty" or "principal place of business" but is that even though it may have been, petitioner has failed to show that he maintained a permanent residence in San Antonio.

We have found as a fact based on the evidence before us, that petitioner paid his sister approximately $50 a month for the use of, or as rent for, a room in her home. Although petitioner did not send the money to his sister on a specific day of each month with a designation on the check, "This is for rent," the clear import of the testimony here is that the $600 a year was paid not merely for the usage of the room on the nights petitioner spent in the room but for the sister's maintaining the room for his use when he wished to have the use of the room. Our inference from the testimony is that the approximately $50 amonth paid by petitioner to his sister for maintaining a room in her home in which he could keep his furniture and personal effects and which would be for his use whenever he cared to use it was in addition to moneys which he sent to his sister's children or to his mother in order that she might pay part of his sister's household expenses. This disposes of respondent's factual contention that petitioner did not in fact pay rent to his sister in return for the sister's maintaining a room for his use.

Respondent's second contention is that even if we find as a factual matter that petitioner did pay rent to his sister in return for his sister's maintaining a room for him available for his use when he found it convenient to use the room, the amount of the payment was not sufficiently substantial for the room to constitute petitioner's residence in San Antonio. The general import of this argument of respondent's seems to be that unless a taxpayer is maintaining a home for someone other than himself so that he has substantial continuing expenses for meals, utilities, and incidental expenses when he is away, he is not entitled to deduct traveling expenses when "away from home."

To follow respondent's contention to its logical conclusion would be in effect to hold that no unmarried person who lived alone in an apartment or a room could deduct traveling expenses away from home in the pursuit of a trade or business, since the only continuing expense when that individual was away from home was the rent expense of the apartment or room. Unquestionably more benefit may result to an unmarried person who does not maintain a home for anyone other than himself because of being able to deduct as a business expense the cost of all of his meals while traveling but not having the same continuing personal living expenses at the place of his residence that a person maintaining a home for his family would have. As was pointed out by the Supreme Court in the recent case of *United States* v. *Correll*, 389 U.S. 299 (1967):

> Under § 162(a)(2), taxpayers "traveling * * * away from home in pursuit of a trade or business" may deduct the total amount "expended for meals and lodging." [6] As a result, even the taxpayer who incurs substantial hotel and restaurant expenses because of the special demands of business travel receives something of a windfall, for at least part of what he spends on meals represents a personal living expense that other taxpayers must bear without receiving any deduction at all.[7] * * *

[6] Prior to the enactment in 1921 of what is now § 162(a)(2), the Commissioner had promulgated a regulation allowing a deduction for the cost of meals and lodging away from home, but only to the extent that his cost exceeded "any expenditures ordinarily required for such purposes when at home." Treas. Reg. 45 (1920 ed.), Art. 292, 4 Cum. Bull. 209 (1921). Despite its logical appeal, the regulation proved so difficult to administer that the Treasury Department asked Congress to grant a deduction for the "entire amount" of such meal and lodging expenditures. See Statement of Dr. T. S. Adams, Tax Advisor, Treasury Department, in Hearings on H.R. 8245 before the Senate Committee on Finance, 67th Cong., 1st Sess., at 50, 234–235 (1921). Accordingly, § 214(a)(1) of the Revenue Act of 1921, c. 136, 42 Stat. 239, for the first time included the language that later became § 162(a)(2). * * * The section was amended in a respect not here relevant by the Revenue Act of 1962, § 4(b), 76 Stat. 976.

[7] Because section 262 makes "personal, living, or family expenses" nondeductible, * * * the taxpayer whose business requires no travel cannot ordinarily deduct the cost of the lunch he eats away from home. But the taxpayer who can bring himself within the reach of § 162(a)(2) may deduct what he spends on his noontime meal although it costs him no more, and relates no more closely to his business, than does the lunch consumed by his less mobile counterpart.

A taxpayer who ordinarily when at his "home" eats his meals in a restaurant very likely receives more of a "windfall" by being able to deduct the cost of his meals when traveling away from home on business than does the one who eats his meals when at "home" with his family. To pursue this line of reasoning further, it could be argued that a taxpayer would be able to eat less expensively at his "home" because of familiarity with the less expensive restaurants than with restaurants away from that home. However, this is not the approach taken by the statute.

In our view the necessity for "substantial continuing living expenses at a permanent place of residence" referred to in cases such as *James* v. *United States, supra,* and *Henry C. Deneke, supra,* was not intended to imply that a taxpayer must maintain a home for someone other than himself for that abode to be a "home" he could be "away from." Those cases each dealt with factual situations involving an individual who merely stayed at a hotel room for which he paid a rental only when occupying the room in the city which he claimed to be his "home" and who had no headquarters, post of duty, or principal place of business at that city or any other place. We do not consider that the discussions of the amounts expended in the cities which the taxpayers in those cases claimed as their "homes" to be for the purpose of deciding how much rent a taxpayer had to pay for a room or apartment in order for that room or apartment to constitute his residence.

Certainly, the determination of whether an individual is entitled to deduct traveling expenses when away from the place where he maintains a permanent residence, which place is also the place of the taxpayer's post of duty, should not turn on whether the room, apartment, or other abode which the taxpayer rents or buys cost $25, $50, $100, or $1,000 per month. The amount of the payment is a relevant factor in determining whether the payment is for a place which is maintained for the taxpayer's use on a permanent basis when he cares to use it, but once this fact has been determined, in our view to consider cost of the permanent quarters maintained by the taxpayer in determining whether that taxpayer is entitled to deduct traveling expenses for food and lodging when away from home in pursuit of his trade or business would only add further confusion to an already confused area of the law. It may be that a taxpayer who has no headquarters, post of duty or principal place of business could not show a sufficient business connection with a place where he paid only $50 a month for rent of a room to have such place considered to be his "home" for the purposes of section 162(a)(2). There have been cases involving skaters in the "Ice Capades" which indicate that even under such circumstances the "room" might be the taxpayer's "home" within

the meaning of section 162(a)(2). However, here we do not have this question since both parties recognize that petitioner's headquarters was in San Antonio.

We hold petitioner is entitled to a deduction for traveling expenses while away from home in the pursuit of a trade or business for the years 1962 and 1963 in the respective amounts of $6,640 and $5,509.90.

Because of adjustments made in the notice of deficiency which were not placed in issue in the petition,

*Decision will be entered under Rule 50.*