Curtis Leon Ralston v. Commissioner.
Ralston v. Commissioner
Docket No. 6257-66.
United States Tax Court
T.C. Memo 1968-248; 1968 Tax Ct. Memo LEXIS 48; 27 T.C.M. (CCH) 1312; T.C.M. (RIA) 68248; October 29, 1968, Filed. James T. Carey, 423 Marion E. Taylor Bldg., Louisville, Ky., for the petitioner. W. Gerald Thornton for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined a deficiency of $341 in petitioner's income tax for the taxable year ending December 31, 1965. The only issue for decision is whether expenses for meals were incurred by petitioner "away from home" within the meaning of section 162(a)(2), [1] so as to entitle him to a deduction under that section. *49 1313 Findings of Fact Some of the facts were stipulated and are so found. Petitioner was a legal resident of Louisville, Kentucky, at the time of filing his petition herein. He filed his Federal income tax return for the calendar year 1965 with the district director of internal revenue at Louisville, Kentucky. Petitioner was born in Louisville, Kentucky, in 1939. He remained in Louisville at all times until his graduation from high school in 1956. From an early age and continuing through his school years, petitioner worked as an exercise boy at a racing stable owned by one S.B. Ott. At all times since his graduation from high school (except for a period of military service during 1961-1963) he has been employed by Ott as a groom. Ott's racing stable has always been and remains based in Louisville. Petitioner's job has required him to travel about the country, from racetrack to racetrack, taking care of the Ott horses. The number of days spent at each location in 1965 is set out in the table below: Location
Number ofdays
Hialeah, Florida
133
Garden State Park, New Jersey
38
Monmouth Park, New Jersey
61
Arlington Park, Chicago, Illinois
43
Keeneland Race Track, Lexington, Kentucky
72
Louisville, Kentucky 18
Total
365
*50 Lexington is 75 miles from Louisville and, during part of the racing period there, petitioner spent some of his nonworking time in Louisville. [2]
Petitioner has never been married. When in Louisville, petitioner stayed at the house he had grown up in. His grandmother lived there, renting the house from his great aunt for $25 per month. When not in Louisville, he slept in lodging provided by his employer. Petitioner has at all times regarded Louisville as his home. Several of his relatives, in addition to his grandmother, live there. He has had a savings account in a Louisville bank and a Kentucky driver's license since before 1959. He filed a Kentucky resident income tax return in 1965, as well as in other years. At all times petitioner's grandmother has set aside a room for his use when he is in Louisville and has kept some of his personal belongings there. When he has been in Louisville, he has bought food for his *51 grandmother, and when he has been away he has sent money to her monthly, in varying amounts up to $25, depending upon what he could spare. The water bill at the house (which includes the sewer bill) has always been in petitioner's name, and he has paid it. Petitioner has not paid any of the other utility bills. On his 1965 Federal income tax return, petitioner reported $4,395 salary and claimed a deduction of $2,010 for expenses during 335 days away from home at a per diem rate of $6. The parties have stipulated that $6 is the measure of these expenses. Ultimate Finding of Fact During 1965, petitioner's "home" was in Louisville, Kentucky. Opinion Section 162(a)(2) allows the deduction as an "ordinary and necessary" expense of "traveling expenses (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business." The single question is whether petitioner's expenditures for meals outside of Louisville, Kentucky, were made "while away from home." Petitioner insists that Louisville was his "home." Respondent argues that petitioner did not have a "home" for tax purposes. We hold for petitioner. The phrase "away from home" is *52 not self-defining. See United States v. Correll, 389 U.S. 299, 304 (1967). The decided cases in which the phrase has been interpreted and applied are legion and we see no need to review them in detail. In a sense, petitioner falls within the general category of the peripatetic worker and we have recently had occasion to analyze the cases involving such workers in Irving M. Sapson, 49 T.C. 636 (1968). 1314 The issue involved herein is essentially factual. Unquestionably, petitioner's contacts with Louisville support the conclusion that it was his home, in the normal nontax sense of that term. He was born there, he grew up there, he went to school there, and his principal relatives lived there. A room was set aside for him in his grandmother's house and he kept some of his belongings there. He helped support his grandmother's household, albeit in small amounts. He had a savings account in Louisville. He held a Kentucky driver's license and filed Kentucky resident income tax returns. He lived in Louisville at his grandmother's house whenever he was in the vicinity. Petitioner was employed by a Louisville-based employer and he worked part of the taxable *53 year in the Louisville area. On the other hand, during 1965, petitioner spent only 30 days in Louisville. [3] Moreover, in view of the small amount which he actually contributed to the support of his grandmother's household and the fact that he had no lodging expenses while away from Louisville, he did not have those "substantial continuing, and duplicitous expenses" which the courts have sometimes suggested as the sine qua non of deductibility. See Kenneth H. Hicks, 47 T.C. 71, 75 (1966); cf. James v. United States, 308 F. 2d 204 (C.A. 9, 1962). We think it significant that there is a coalescence of four important factors herein: (1) Petitioner's historical and familial connections were at all times in Louisville; (2) he returned there on most, if not all, occasions when his work permitted and he made some contributions, albeit small, to suport of the Louisville household; (3) petitioner's employer was Louisville-based; and (4) petitioner in fact worked a part of the taxable year (and we infer of other years as well) in Louisville. Where there has been a coalescence of place of abode and the performance of some work *54 in the vicinity thereof for an employer who was based in the same vicinity, the courts have generally permitted a deduction for meals and lodging elsewhere. Pierce v. United States, 271 F. Supp. 165 (W. D. Ark. 1967) (racetrack steward); Schreiner v. McCrory, 186 F. Supp. 819 (D. Neb. 1960) (insurance field representative); Irving M. Sapson, supra (traveling salesman); Alois Joseph Weidekamp, 29 T.C. 16 (1957) (parimutuel calculator); Charles G. Gustafson, 3 T.C. 998 (1944) (magazine salesman); see also Burns v. Gray, 287 F. 2d 698 (C.A. 6, 1961) (racetrack starter) and Nat Glogowski, Sr., T.C. Memo. 1967-236 (racetrack auditor). To be sure, an important element in those cases was the existence of duplicitous expenses. But we think that the controlling consideration was the coalescence of the factors noted above and that the overlap of actual expenses was not necessarily the key to decision. Thus, the lack of actual duplicitous expenses is not always determinative. Indeed, we note that if the duplicitous expense standard is construed to mean that substantial overlap of actual expenditures *55 must always be shown, cases of this type will require both litigants and the courts to indulge in the numbers game with respect to the relationship between the amount of expenses at the claimed "home" and elsewhere, between the amount of expenses elsewhere and the taxpayer's income from the business, etc. Beyond this, the inexorable application of such a standard would produce variations depending upon such elements as the family status of the taxpayer (married, with or without children, or single) and the fortuitous existence of rich relatives who pay the bills at the claimed "home" or an employer who provides lodging for the employer's convenience. As a result, taxpayers will be required to take "pot luck in the courts," which, in turn, will have to draw arbitrary lines. Cf. United States v. Correll, supra.Obviously, the absence of duplicitous expenses is a useful tool to resolve situations where the other facts involved point to the conclusion that the taxpayer had no "place of abode" in the commonly accepted sense of that phrase and for all practical purposes "carried his home on his back." See Kenneth H. Hicks, supra, 47 T.C. at p. 73. Moreover, in *56 respect of expenditures for meals, the concept of duplicitous expenses is not really applicable, since there is only one payment per meal. Here, the justification rests simply upon the assumption that it costs a taxpayer more to eat when he is away from home; the deduction, however, is not limited to the excess cost. See James v. United States, supra.In this case, only meals are involved and this rationale applies since petitioner lived with his 1315 grandmother when he was in Louisville. A truly peripatetic worker would be in a different position in view of the fact that he would have no abode where, if he were not on the road, he could eat at the presumed lesser cost. Under all the circumstances herein, we are satisfied that the taxpayer did not carry his home on his back and that in 1965 his "home" for tax purposes was Louisville, Kentucky. Cf. Irving M. Sapson, supra.
Decision will be entered for the petitioner. Footnotes
1. All references are to the Internal Revenue Code of 1954. The parties argued the case in terms of section 162(a)(2). In point of fact, petitioner claimed the standard deduction and additionally, under section 62(2)(A), seeks to reduce his gross income by the amount of these expenses. That section, however, is correlated with section 162(a)(2) and the same phrase "away from home" appears in both sections.↩
2. Petitioner claimed a deduction covering only 335 days, although the schedule indicates that he spent 347 days outside Louisville. We infer that the additional 12 days represented that part of the period in Lexington when petitioner stayed in Louisville.↩
3. See footnote 2, supra.↩