EMIL J. MICHAELS AND DELORES E. MICHAELS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 290–68.   Filed November 18, 1969.

Emil J. Michaels, pro se.
*Michael Pargament*, for the respondent.

OPINION

RAUM, *Judge:* We turn first to the question of the deductibility of petitioner's expenditures for meals and lodging in the Los Angeles area in 1964.

Section 162(a)(2), I.R.C. 1954, allows a deduction for traveling expenses incurred "while away from home in the pursuit of a trade or business":

SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\*        \*        \*        \*        \*        \*        \*

(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; \* \* \*

In *Commissioner* v. *Flowers*, 326 U.S. 465, 470, the Supreme Court declared:

Three conditions must \* \* \* be satisfied before a traveling expense deduction may be made \* \* \*:

(1) The expense must be a reasonable and necessary traveling expense \* \* \*
(2) The expense must be incurred "while away from home."
(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. \* \* \*

The parties have stipulated that petitioner's expenditures were "reasonable and necessary" to the extent of $2,065.75. Moreover, it is not disputed that the petitioner's expenses were "incurred in pursuit of business."

The Commissioner contends that petitioner was not "away from home." Because petitioner was assigned to the Los Angeles area for a "substantially long" or "indefinite" period, the Commissioner argues, Seattle was no longer his "home" after June 1964. Therefore, his argument concludes, petitioner's meal and lodging expenses are not deducti-

ble under section 162(a)(2) and are simply nondeductible personal expenses. We disagree.

We have consistently held that "home" in section 162(a)(2) means the taxpayer's principal place of employment. See, e.g., *Rendell Owens*, 50 T.C. 577, 580; *Ronald D. Kroll*, 49 T.C. 557, 561–562; *Floyd Garlock*, 34 T.C. 611, 614; *Mort L. Bixler*, 5 B.T.A. 1181, 1184; cf. *Commissioner* v. *Stidger*, 386 U.S. 287, 290–296. However, we have also recognized an exception to this rule: that the taxpayer's principal place of work is not his "home" for the purpose of section 162(a)(2) when his employment there is only "temporary," as distinguished from "indefinite" or "indeterminate." Compare *Floyd Garlock*, 34 T.C. 611; *James M. Eaves*, 33 T.C. 938; *Kermit L. Claunch*, 29 T.C. 1047, affirmed 264 F. 2d 309 (C.A. 5); with *Alois Joseph Weidekamp*, 29 T.C. 16, acq. 1958–2 C.B. 8; *Harold R. Johnson*, 17 T.C. 1261, acq. 1952–1 C.B. 2; *E. G. Leach*, 12 TC. 20, acq. 1949–1 C.B. 3. See also *Peurifoy* v. *Commissioner*, 358 U.S. 59, 60.

When petitioner was assigned to the Los Angeles area, he was told that his assignment was for only 1 year. Furthermore, at the time he was assigned, Boeing did not have a permanent office for cost analysis in Los Angeles. Not until March 1965, when petitioner was recalled to Seattle, did petitioner have reason to know that his employment in Los Angeles was other than temporary. Moreover, petitioner's decision not to sell his house in Seattle and to leave some of his furniture there suggests to us that he believed that his stay in Los Angeles would be brief and that he would be returning to Seattle. A period of 1 year seems to us both sufficiently lengthy to explain petitioner's decision to bring his family to the Los Angeles area and sufficiently brief to justify his decision to retain his house in Seattle.

In *Laurence P. Dowd*, 37 T.C. 399, 409–410, we allowed a deduction for meal and lodging expenses under somewhat similar circumstances. There, a taxpayer, who lived in a house in Seattle, received a so-called Fulbright grant to lecture for 10 months at a university in Japan. He rented out his house in Seattle and moved to Japan with his family. While in Japan, the taxpayer's grant was extended to include the following academic year. We held that his employment in Japan was temporary and allowed the deduction. We find *Dowd* controlling here.

There are, however, several cases, not urged upon us by the Commissioner which emphasize that section 162(a)(2) is designed "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." *Ronald D. Kroll*, 49 T.C. 557, 562; see also *Harvey* v. *Commissioner*, 283 F. 2d 491–495 (C.A. 9). As a result the opinion in one case has reasoned:

there is no duplication unless the taxpayer maintains an abode at which he incurs living expenses in addition to those which he incurs while traveling. And when duplication does exist, it constitutes a valid reason for attributing living expenses to business necessity only to the extent of the duplication. It follows that the Section 23(a)(1)(A) deduction of *total* expenditures for meals and lodging should be held to apply (so far as duplication is the justification) only when the taxpayer has a "home," the maintenance of which involves substantial continuing expenses which will be duplicated by the expenditures which the taxpayer must make when required to travel elsewhere for business purposes.

The second justification for treating the cost of meals and lodging on business trips as business expense is the assumption that food and shelter cost more while traveling. This justification also supports a reading of the Section as requiring maintenance of a substantial permanent abode at which taxpayer could live at a lesser expense if not required to travel. If a taxpayer has no such home, and obtains his food and shelter at public restaurants and lodgings even if not traveling, the increase in the cost of these items attributable to travel is at least substantially less.[7]

For these reasons it has generally been held that the taxpayer cannot be "away from home" * * * unless he has a "home" * * *. And we think the better reasoned authority holds that a taxpayer has a "home" for this purpose only when it appears that he has incurred substantial continuing living expenses at a permanent place of residence.[9] [Footnotes omitted.]

*James* v. *United States*, 308 F. 2d 204, 207–208 (C.A. 9) ; see also *Leo M. Verner*, 39 T.C. 749; *United States* v. *Mathews*, 332 F. 2d 91 (C.A. 9).

*James*, *Verner*, and *Mathews* disallowed deductions for meal and lodging expenses where a taxpayer and his family moved to an abode in the vicinity of a new station of employment. In each case there was no determination that the taxpayer's new station was temporary rather than indefinite. Moreover, in none of them did the taxpayer continue to own or rent a dwelling in the locality which he claimed as his "home." As a result, the court in each case concluded, he had no "home" to be away from, and thus he did not incur the expense of maintaining two places of abode. However, in both *Dowd* and the case now before us, the taxpayer continued to own a house which he rented out during his absence.

In the context of this case, we find this distinction significant. The lease on the house in Seattle was for only 1 year. The petitioner left a portion of his own furniture in the house. As far as the taxpayer knew in 1964, he and his family would be returning to Seattle sometime in mid-1965. In this setting we regard retention of the house in Seattle as persuasive evidence of the taxpayer's intention to return to it in 1965. We find that he did have a "home" to which to return. Cf. *Josette J. F. Verrier Friedman*, 37 T.C. 539, 558.

Nor do we find here that petitioner was able to avoid completely duplication of his living expenses. While it is true that he had rented his Seattle house, the return in evidence shows that the rent received

was $875 as against $1,945.05 in expenses related thereto. Although the Commissioner disallowed $117.06 of the claimed $1,070.05 rental loss, there nevertheless remained a substantial loss of $952.99, which certainly suggests an added cost to petitioner's California living expenses. Moreover, while the absence of duplicated living expenses is an important factor to be considered, we think it should not be determinative of the question of deductibility, cf. *Irving M. Sapson*, 49 T.C. 636, 644; *Curtis Leon Ralston*, 27 T.C.M. 1312, 1314, particularly where, as here, absence of added expenses is overshadowed by the temporary nature of petitioner's initial assignment in Los Angeles, by the retention of his house in Seattle, and by the limited period for which the house was rented.

Next, we reach the issue of the deductibility of petitioner's unreimbursed automobile expenditures in excess of the amount allowed by the Commissioner. The Commissioner has allowed petitioner to deduct automobile expenses to the extent of $894.26, the amount of the reimbursement from Boeing. In addition, he has allowed petitioner to deduct $367.57 as unreimbursed expenses.

Petitioner has the burden of proving to what extent his automobile expenses were incurred for business and personal purposes. Cf. *Reginald G. Hearn*, 36 T.C. 672, affirmed 309 F. 2d 431 (C.A. 9); *Anderson v. United States*, 368 F. 2d 225 (C.A. 5). He has failed to produce evidence to justify allocating his automobile expenses between business and personal use on a basis different from that used by the Commissioner. Accordingly, we sustain the Commissioner's disallowance of $1,070.20 of the claimed automobile expenses.

*Decision will be entered under Rule 50.*