T.C. Memo. 1999-184

UNITED STATES TAX COURT

JOHN ALLEN AND GLENNA A. LYLE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18428-97.                        Filed June 7, 1999.

John Allen Lyle and Glenna A. Lyle, pro sese.

Gerald L. Brantley, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, Judge:  Respondent, by means of a statutory notice
of deficiency, determined a deficiency in petitioners' 1995
income tax of $8,938 and a section 6662(a)[1] penalty of $1,788.

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year under
consideration, and all Rule references are to this Court's Rules
of Practice and Procedure.

The issues for our consideration are: (1) Whether the correspondence in this case from respondent's employee estopped respondent from determining a deficiency in petitioners' 1995 Federal income tax; (2) whether respondent correctly determined that petitioners must recognize income from Social Security benefits in the amount of $7,643 for the taxable year 1995; (3) whether petitioners are entitled to deduct $11,282 in alleged job-hunting expenses; (4) whether petitioners are entitled to deduct temporary living expenses of $5,240; (5) whether petitioners' gambling losses are limited to their income from gambling for taxable year 1995; and (6) whether petitioners are liable for the accuracy-related penalty under section 6662(a). Separate Findings of Fact and Opinion are hereafter set forth with respect to each of the first five issues. Those portions of the Stipulation of Facts that pertain to a particular issue are incorporated by this reference in the Findings of Fact for the issue to which they relate.

I. 1994 Refund Letter

FINDINGS OF FACT

At the time of the filing of the petition in this case, petitioner John Allen Lyle resided in El Paso, Texas. Petitioner Glenna A. Lyle resided in Nashville, Tennessee. Glenna A. Lyle is a petitioner in this case because she joined in filing Federal income tax returns with her husband John Allen Lyle (petitioner).

On November 21, 1995, petitioners sent a letter to the Problem Resolution Office of the Internal Revenue Service concerning the status of their request for refund on their additional amended income tax return filed for 1994. The Problem Resolution caseworker replied, in a letter dated June 11, 1996, that the refund had been allowed and indicated that it would be used to offset petitioners' 1995 tax account. The letter further indicated that "Since only $1,314 of the $1,682 [refund] from 1994 was needed to full pay the 1995 account, you will also receive a refund for 1995 of $371.54."

OPINION

We must decide whether the letter from respondent's caseworker estops respondent from determining a deficiency for petitioners' 1995 Federal income tax. Petitioners assert that because the letter indicated that only $1,314 was needed to "full pay" petitioners' 1995 Federal tax liability, respondent has forfeited the right to determine a deficiency for petitioners' 1995 Federal income tax. Respondent contends that the doctrine of equitable estoppel should not be applied in this case. We agree with respondent.

The doctrine of equitable estoppel is applied against the Government only with utmost caution and restraint. See Kronish v. Commissioner, 90 T.C. 684, 695 (1988). Taxpayers must prove at least the following elements before courts will apply

equitable estoppel against the Government: (1) A false representation or wrongful, misleading silence by the party against whom the estoppel is claimed; (2) an error in a statement of fact and not in an opinion or statement of law; (3) the taxpayer's ignorance of the true facts; (4) the taxpayer's reasonable reliance on the acts or statements of the one against whom estoppel is claimed; and (5) adverse effects suffered by the taxpayer from the acts or statements of the one against whom estoppel is being claimed. See Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 60 (1995), supplemented by 104 T.C. 417 (1995).

Petitioners have failed to establish that all of the elements for equitable estoppel have been satisfied. The correspondence which petitioner relies on to support his contention simply described how the allowed refund for 1994 would be applied to petitioners' tax account. The correspondence did not make any representation that petitioners owed no additional 1995 tax. Therefore, petitioners have failed to establish that there has been a false representation by respondent.

Moreover, it was not reasonable for petitioners to rely on the letter from respondent's caseworker for the proposition that petitioners owed no additional income tax for 1995. The letter was written in response to petitioners' request for refund on an amended income tax return filed for 1994. The letter does not purport to be a determination regarding petitioners' 1995 return

and does not state that petitioners' 1995 income tax return has been accepted as filed, nor does it address any of the specific issues encompassed in the notice of deficiency. Accordingly, respondent is not estopped from determining a deficiency in petitioners' 1995 income tax.

II. Social Security Benefits

FINDINGS OF FACT

Petitioners reported receiving Social Security benefits of $8,993 on their 1995 income tax return. Petitioners did not, however, compute the taxable portion of their Social Security benefits to be included in their gross income. Respondent treated their failure to enter the taxable portion as a computational adjustment and determined that the taxable portion of the benefits was $7,643.

OPINION

Section 86 governs the taxability of Social Security benefits. Applying that section, respondent determined that the taxable portion of the benefits was $7,643. Petitioners do not dispute the accuracy of respondent's calculation. Rather, petitioners argue that the taxation of Social Security benefits is an ex post facto law in violation of Article I of the Constitution. Their position has no merit. The prohibition against ex post facto laws applies only to penal legislation that imposes or increases criminal punishment for conduct predating

its enactment.  See <u>Harisiades v. Shaughnessy</u>, 342 U.S. 580, 594 (1952).  The Ex Post Facto Clause is not applicable in a civil context.  See <u>Johannessen v. United States</u>, 225 U.S. 227, 242 (1912).  Accordingly, section 86 does not violate the Ex Post Facto Clause of the Constitution.

III.  <u>Job-Hunting Expenses</u>

FINDINGS OF FACT

In August 1994 petitioners moved to Nashville, Tennessee, from El Paso, Texas, after Mrs. Lyle accepted a job in Nashville. Petitioner, who had 10 years of experience as an El Paso public school teacher, attempted to find employment in the Nashville area.  From January to March 1995, petitioner had three interviews with the following prospective employers:  Three Springs Wilderness program; a Christian academy; and the Metro Nashville school district.  At the time of the interviews, petitioner was living in an apartment in Nashville.  Petitioner drove the following distances (one way) for his three interviews: 70 miles for the first interview, 5 miles for the second interview, and 30 miles for the third interview.  None of the interviews resulted in employment.

On April 1, 1995, petitioner left Nashville for Las Vegas, Nevada, for the joint purposes of gambling and finding a job in the teaching profession.  Mrs. Lyle remained in Nashville. Petitioner drove to Las Vegas from Nashville, a distance of about

1,311 miles. Petitioner had three job interviews while in Las Vegas. The first job interview was in Bull Head City, Arizona, a distance of about 100 miles from the hotel that petitioner was residing in. The record does not disclose the distances petitioner traveled for his second and third interviews. Petitioner was unable to secure a teaching position in the Las Vegas area. While in Las Vegas, petitioner contacted a high school principal he knew in El Paso, Texas, who hired petitioner over the telephone.

Petitioner gambled every day from his arrival in April until he left Nevada for El Paso, Texas, in late July 1995. Petitioners claimed $9,764 in job-hunting expenses on their 1995 Federal income tax return. Respondent disallowed the claimed expenses.

                            OPINION

Section 162(a)(2) permits a deduction for ordinary and necessary expenses incurred in carrying on a trade or business, including traveling expenses (which include amounts expended for meals and lodging other than amounts that are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business. In addition to deducting expenses relating to temporary employment away from home, a taxpayer may also deduct expenses incurred in seeking employment. See Primuth v. Commissioner, 54 T.C. 374 (1970). These

expenditures are deductible under section 162(a) regardless of whether employment is obtained.  See Cremona v. Commissioner, 58 T.C. 219 (1972).  Deductible job-seeking expenses can include travel expenses while away from home.  See Kozera v. Commissioner, T.C. Memo. 1986-604.  The deduction for expenses incurred away from home is intended to mitigate the burden of a taxpayer who, because of the travel requirements of his trade or business, must maintain two places of abode and therefore must incur duplicate living expenses.  See Barone v. Commissioner, 85 T.C. 462, 466 (1985), affd. without published opinion 807 F.2d 177 (9th Cir. 1986).

In order to be allowed as a deduction under section 162, a taxpayer must establish that the travel expenses were:  (1) Reasonable and necessary; (2) incurred while away from home; and (3) incurred in pursuit of a trade or business.  See Horton v. Commissioner, 86 T.C. 589, 593 (1986).  Petitioners claimed substantial amounts attributable to lodging, food, travel, postage, long-distance telephone calls, and car insurance as job-hunting expenses.  These expenses were incurred during the period January through July 1995.

Respondent has two alternative theories for denying the job-hunting expenses.  First, respondent contends that petitioner had no tax home in 1995, and therefore none of the traveling expenses can be deducted because they were not incurred "while away from

home".  Id.  In the alternative, respondent contends that, even if petitioner's tax home was Nashville, only the portion of the expenses directly attributable to job hunting are deductible.

Generally, a taxpayer's "home", for purposes of section 162(a), is the city or location of his or her principal place of business and not where his or her personal residence is located. See Mitchell v. Commissioner, 74 T.C. 578, 581 (1980).  However, an employee without a principal place of business may treat a permanent place of residence at which he incurs substantial continuing living expenses as his tax home.  See Sapson v. Commissioner, 49 T.C. 636, 640 (1968).  Nevertheless, where a taxpayer has neither a principal place of business nor a permanent place of residence, a taxpayer has no tax home from which to be away.  Such taxpayers' "homes" are wherever they happen to be.  See Brandl v. Commissioner, 513 F.2d 697, 699 (6th Cir. 1975), affg. T.C. Memo. 1974-160; Barone v. Commissioner, supra.

While the subjective intent of taxpayers is to be considered in determining whether they have tax homes, this Court and others consistently have held that the objective financial criteria bear a closer relationship to the underlying purpose of the deduction. See Barone v. Commissioner, supra at 465.  Whether petitioner had a tax home is a factual question, and the burden of proof is on petitioner.  See Rule 142(a).

In the present case, petitioner's testimony pertaining to these objective factors was vague at best.  Petitioner testified concerning his expenditures in Nashville and Las Vegas; however, his explanations were lacking in meaningful detail.  Although petitioner did not have a principal place of business during much of 1995, several objective factors indicate that Nashville, during the period from January through July 1995, was petitioner's permanent place of residence.  First, petitioners resided in Nashville from August 1994 through March 1995, a period of 8 months.  Second, during the period beginning January and until August 1995, petitioners paid rent on an apartment in Nashville, a substantial living expense.

### A.  Job-Hunting Expenses in Nashville

Since Nashville was petitioner's permanent place of residence, he was not away from home during his job-searching in Nashville, and therefore the expenditures for lodging in Nashville are not deductible.  Petitioner drove a total of 210 miles to various job interviews in the Nashville area, and is entitled to a travel deduction of $63 as a job-hunting expense (210 miles times 30 cents per mile).  See Rev. Proc. 94-73, 1994-2 C.B. 816.  No amount for meals, postage, long-distance telephone calls or car insurance is allowable because petitioner has not substantiated that these expenses were related to his job-hunting.

B.  Job-Hunting Expenses in Las Vegas

Petitioner also claimed significant travel expenses for the period beginning April through July 1995.  Since we have determined that petitioner's tax home was Nashville, the expenses must be allocated between petitioner's gambling and job-hunting activities.  It is difficult to discern the amount of time petitioner spent on his gambling versus his job-hunting activities.  Considering all of the facts and circumstances, we conclude petitioner spent approximately one-quarter of his time job-hunting in Las Vegas.  Accordingly, petitioner is entitled to a $700 deduction for food and lodging.  No amount for postage, long-distance telephone calls, or car insurance is allowable because petitioner has not substantiated that these expenses were related to his job-hunting.

If an employee travels to an area to seek new employment and also engages in personal activities, traveling expenses are deductible only if the trip is related primarily to seeking new employment.  See sec. 1.162-2(b), Income Tax Regs.  The amount of time during the period of the trip that is spent on personal activity compared to the amount of time spent on seeking new employment is important in determining whether the trip is primarily personal.  See id.  Petitioner spent most of his time in Las Vegas gambling, rather than seeking new employment.  Accordingly, petitioner is not entitled to deduct his travel

expenses from Nashville to Las Vegas.  Petitioner drove a total of 200 miles to his job interview in Bull Head City, Arizona, and is entitled to a travel deduction of $60 as a job-hunting expense (200 miles times 30 cents per mile).  See Rev. Proc. 94-73, 1994-2 C.B. 816.

IV.  Temporary Living Expenses

FINDINGS OF FACT

After accepting a teaching position in El Paso, Texas, over the telephone, petitioner left Las Vegas in late July 1995. Petitioner's job commenced on August 1, 1995.  As of September 8, 1997, 2 years after the job commenced, petitioner continued to reside in El Paso, and his wife continued to reside in Nashville.

OPINION

Petitioner asserts that he is entitled to deduct $5,240 in living expenses as "temporary living expenses".  These expenses were incurred during the period from August through December 1995.  Petitioner contends that he is entitled to deduct his living expenses during this period because he lived in El Paso for less than 6 months during 1995.  We find petitioner's argument to be flimsy and farfetched.

The fact that petitioner lived at a certain address for less than 6 months during the taxable year is not necessarily relevant or important to the question of whether he is entitled to deduct living expenses.  An employee employed temporarily at a distance

from his home is allowed to deduct the costs of meals and lodging at his temporary job site on the theory that he is "away from home". Tucker v. Commissioner, 55 T.C. 783, 786 (1971). As discussed previously, the purpose of this rule is to mitigate the hardship suffered by taxpayers who must maintain two places of abode and therefore incur duplicate living expenses. See Barone v. Commissioner, supra. However, an employee who accepts employment of an indefinite duration cannot deduct living costs at the distant job site. See Peurifoy v. Commissioner, 358 U.S. 59 (1958). In addition, when a husband and wife are employed or conduct business indefinitely in two widely separated locations, they cannot deduct living expenses incurred at either site. See Foote v. Commissioner, 67 T.C. 1 (1976).

Petitioner has not established that his job in El Paso was temporary. He offered no evidence that the teaching position was for a limited time after which he intended to return to Nashville. On the contrary, the entire record indicates that El Paso had become petitioner's principal place of business following his move from Las Vegas. Petitioner arrived in El Paso in late July for a job commencing on August 1, 1995. As of September 8, 1997, 2 years after the job commenced, petitioner continued to reside in El Paso. Accordingly, petitioners are not entitled to deduct the $5,420 in living expenses as temporary living expenses.

V.  Gambling Losses

FINDINGS OF FACT

Petitioner gambled every day from April until he left Las Vegas in late July 1995.  Petitioners claimed "gaming wins" of $1,200 and gambling expenses and losses of $35,034 on their 1995 Federal income tax return.  Respondent disallowed petitioners' gambling expenses and losses in excess of gambling winnings.

OPINION

Petitioners maintain that, pursuant to section 162(a), the net wagering losses represented a deductible trade or business expense.  Respondent contends that the deduction of net wagering losses is precluded by section 165(d).  We agree with respondent. Section 165(d) provides that "Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions."  In other words, a taxpayer is not entitled, as a matter of law, to deduct a net gambling loss.

Petitioner relies on Commissioner v. Groetzinger, 480 U.S. 23 (1987), for the proposition that net gambling losses are properly deductible in full as trade or business expenses under section 162(a).  Petitioners' discussion of Groetzinger ignores the fact that the section 165(d) restriction was not at issue in Groetzinger.  The issue in Groetzinger was whether a full-time gambler, who made wagers solely on his own account, was engaged in a trade or business under section 162 for purposes of treating

his gambling losses as a tax preference item under the minimum tax scheme governed by sections 55 and 56. See <u>Valenti v. Commissioner</u>, T.C. Memo. 1994-483. Petitioners are not entitled to gambling losses in excess of their income from gambling.[2]

VI. <u>Accuracy-Related Penalty Under Section 6662</u>

Respondent also determined that petitioners were negligent and liable for an accuracy-related penalty under section 6662(a). Section 6662(a) and (b)(1) imposes an accuracy-related penalty equal to 20 percent of the portion of an underpayment that is attributable to negligence or disregard of rules or regulations.

In determining whether petitioners were negligent in the preparation of their returns, we take into account petitioner's tax experience. Petitioner, a self-proclaimed "trained tax specialist", should have realized that the deduction of 7 months of living expenses as job-hunting expenses after a limited job-hunting effort was not reasonable. Combining that with petitioner's gambling losses presents a situation that was "too

---

[2]Petitioners made several other arguments which we found to be outlandish, such as their request for $15 billion in punitive damages. To the extent we have not addressed petitioners' other arguments we find them to be without merit.

good to be true" within the meaning of section 1.6662-3(b)(1)(ii), Income Tax Regs.  Accordingly, petitioners are liable for the section 6662(a) penalty.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>