YURY A. LINETSKY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Linetsky v. Commissioner
Docket No. 14096-91
United States Tax Court
T.C. Memo 1994-306; 1994 Tax Ct. Memo LEXIS 309; 68 T.C.M. (CCH) 8; July 5, 1994, Filed *309 Decision will be entered under Rule 155. For petitioner: Phillip A. Lawrence. For respondent: Terry W. Vincent. PARKER
PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1986 in the amount of $ 14,412.34. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, [1] the issues remaining for decision are: (1) Whether Yury A. Linetsky (petitioner) was "away from home" in 1986 while he was working in Knoxville, Tennessee, entitling him to deduct his expenditures for meals, lodging, travel, and other incurred expenses; and (2) Whether petitioner's wife, Lana Linetsky (Mrs. Linetsky), was "away from home" while she was working in Hattiesburg, Mississippi, during 1986. *310 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits thereto are incorporated herein by this reference. Petitioner resided in Solon, Ohio, at the time he filed his petition. Although a joint return was filed for 1986, respondent issued separate statutory notices of deficiency to petitioner and to Mrs. Linetsky. Neither respondent nor petitioner has been able to contact Mrs. Linetsky or locate a current address for her. [2] Mrs. Linetsky is considered a non-petitioning spouse in this case. Mrs. Linetsky's expenses, other than certain automobile expenses and investment credit, were not deducted on the 1986 joint return. However, since a joint return was filed, Mrs. Linetsky's expenses would be deductible if it is shown that she also was away from home during 1986. During the audit, petitioner prepared a pro forma list of her meal and lodging expenses, but these expenses have never been substantiated. *311 Petitioner and Mrs. Linetsky are Russian immigrants. Petitioner is an electrical engineer in the nuclear power plant field. He primarily works on the construction of nuclear power plants. From 1981 through August of 1985, petitioner was employed by the Bechtel Power Corporation and resided in Ann Arbor, Michigan. In August of 1985, petitioner moved to Champaign, Illinois, to take a position with Industrial Assistance Corp. Petitioner expected the job to be of a long duration (at least 10 to 15 years) since it involved the construction, start up, and maintenance of a new nuclear power plant (the Clinton Power Station). Consequently, in that same month of August of 1985, petitioner purchased a residence for himself and his wife in Champaign, Illinois (the Champaign house). Prior to January of 1986, petitioner's employment with Industrial Assistance Corp. was suddenly and unexpectedly terminated. On January 6, 1986, petitioner found employment through Consultants and Designers, Inc., an employment agency, to work with the Tennessee Valley Authority in the Knoxville, Tennessee, area. Consultants and Designers, Inc., is an employment agency that specializes in finding temporary *312 employment for engineers and technicians. The agency itself pays the salaries of these engineers and technicians and sends them to job assignments around the country. Consultants and Designers, Inc., represented to petitioner that this Knoxville job was a temporary one, lasting only 6 months. [3] During 1986, petitioner rented an apartment in Knoxville. Petitioner negotiated a lease contingent upon continued employment, under which he could terminate the lease without penalty as soon as the job terminated. Petitioner's employment with Consultants and Designers, Inc., in the Knoxville area in fact lasted for more than 18 months. *313 Mrs. Linetsky was a full-time student during 1985 and was not employed outside of the home. She lived in the Champaign house after August of 1985. After she completed her college education, she was unable to find employment locally and finally accepted an out-of-state position to gain work experience. In February of 1986, Mrs. Linetsky took an employment position in accounting in Hattiesburg, Mississippi, which lasted until November or December of 1986. Her job terminated suddenly when her employer went into bankruptcy. During 1986, Mrs. Linetsky rented an apartment in Hattiesburg, Mississippi, and traveled occasionally to the Champaign house. Petitioner continued to own the Champaign house during 1986. He paid all property taxes, sewer bills, and utilities, and made necessary repairs to the home. He did not offer the house for rent because, during 1986, petitioner's stepsister, whom he supported, lived in the home while on vacations from school. Mrs. Linetsky also occasionally traveled to and stayed at the Champaign house. Petitioner also returned to the Champaign home almost every weekend when his sister or his wife was there. When his family was not at the Champaign *314 home, petitioner did not make any trips there. Petitioner estimated that he made some 30 trips to the Champaign house during 1986. It takes approximately 5 to 6 hours to travel by automobile from Knoxville, Tennessee, to Champaign, Illinois. Petitioner's 1985 employment with Industrial Assistance Corp. was, and remains, the only employment that he has had in the Champaign, Illinois, area. Nevertheless, petitioner diligently sought employment in that area throughout 1986 and 1987. Since the Clinton Power Station was at the beginning stages of construction, petitioner believed that there was still potential employment in the area and that a position for him would eventually become available with one of the contractors, subcontractors, or the utility company itself. He contacted the large companies that had ongoing contracts with the Clinton Power Station. He also reviewed various trade magazines for employment listings in Illinois. He never received any offer of work in the Champaign area. In late 1988 or early 1989, petitioner secured permanent employment in Ohio. Petitioner and Mrs. Linetsky were divorced in May of 1987, in Knox County, Tennessee. In early 1987, petitioner *315 filed for divorce in Knox County, Tennessee, on the grounds of irreconcilable differences. [4] After her job ended in late 1986, Mrs. Linetsky returned to the Champaign house and lived there until the divorce was finalized. The divorce was granted by default judgment on May 14, 1987. Sometime later in 1987, petitioner left Tennessee and moved to Ohio for a new job assignment. No one lived in the Champaign house after the divorce in 1987 or in 1988. Petitioner subsequently sold the house. *316 Petitioner and his wife filed a joint Federal income tax return for the taxable year 1986. On that 1986 joint return, petitioner claimed employee business expense deductions of $ 17,088 for vehicle expenses and $ 18,739 for his travel expenses, including his meals and lodging. The $ 17,088 for vehicle expenses included $ 6,449 for vehicle 1 (a small pick-up truck) and $ 10,639 for vehicle 2 (a Pontiac Firebird). Vehicle 1 traveled 34,000 miles in 1986, and vehicle 2 traveled 26,000 miles that year. An investment credit was claimed for each vehicle, $ 432 for vehicle 1 and $ 789 for vehicle 2, for a total of $ 1,221. Respondent disallowed those deductions and the investment credits in their entirety in the statutory notice of deficiency. OPINION The principal issues in this case are whether petitioner was "away from home" while he was working in the Knoxville, Tennessee, area, thereby entitling him to deduct certain expenses incurred while working there, and whether Mrs. Linetsky was "away from home" while she was working in Hattiesburg, Mississippi. Normally, personal, living or family expenses are not deductible. Sec. 262. However, section 162(a)(2) allows a deduction *317 for all ordinary and necessary traveling expenses, including meals and lodging, paid or incurred during the taxable year while away from home in the pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946). Section 162(a)(2) mitigates the burden a taxpayer faces when, because of the exigencies of his or her trade or business, he or she must maintain two places of abode and must incur additional living expenses. Kroll v. Commissioner, 49 T.C. 557, 562 (1968). Generally, for purposes of section 162(a)(2), a taxpayer's home is the area or vicinity of the principal place of employment and not the location of the taxpayer's residence. Markey v. Commissioner, 490 F.2d 1249, 1253 (6th Cir. 1974), revg. T.C. Memo. 1972-154; Mitchell v. Commissioner, 74 T.C. 578, 581 (1980). An exception to this rule exists when a taxpayer has a well-established home but accepts temporary employment elsewhere. Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958). We have held that "where a taxpayer does *318 not have a nontemporary principal place of business away from the vicinity of his residence, then his place of residence remains his home for tax purposes." Dean v. Commissioner, 54 T.C. 663, 667 (1970) (emphasis in original). In such situations, we have found that it is not reasonable to expect a taxpayer to move his home simply to be near temporary employment. Tucker v. Commissioner, 55 T.C. 783, 786 (1971). Whether employment is temporary or indefinite is a question of fact to be decided in light of the entire record. Peurifoy v. Commissioner, supra at 61. Employment tends to be classified as temporary rather than indefinite if termination from the position is foreseeable within a short period of time. Kasun v. United States, 671 F.2d 1059, 1061 (7th Cir. 1982); Albert v. Commissioner, 13 T.C. 129, 131 (1949). Therefore, "While it is assumed that a person will live near the place of employment, it is not reasonable to expect people to move to a distant location when a job is foreseeably of limited duration." Kasun v. United States, supra at 1061; *319 see also Boone v. United States, 482 F.2d 417, 419 (5th Cir. 1973). We have allowed deductions for "away from home" expenses in circumstances similar to those of petitioner. See Michaels v. Commissioner, 53 T.C. 269 (1969); [5]Dowd v. Commissioner, 37 T.C. 399 (1961). We found petitioner to be a credible witness. Petitioner was told by the employment agency that the position in Knoxville, Tennessee, would last for 6 months and even that period was not assured. Petitioner rented an apartment in Knoxville with a provision to be released from the lease should he be terminated from that job within 6 months or prior to the end of the lease term. He continued to return to the Champaign house during the times that his stepsister or his wife was present there. Petitioner continued to pay the property taxes, utilities, and other such expenses of the house during his absence, and to perform necessary maintenance work on the house. He also continued to diligently seek employment in Illinois in the vicinity of the Champaign house. Petitioner's retention and maintenance of his house in Champaign *320 suggest that he believed his stay in Knoxville was temporary and that he would be able to return to Champaign and resume permanent employment in that area. That was a reasonable belief since the Clinton Power Station near Champaign was in the early stages of construction and the project would last for many years. We find that petitioner incurred these additional living expenses in Knoxville, Tennessee, due to the exigencies of his business and not from personal choice. Coombs v. Commissioner, 608 F.2d 1269, 1276 (9th Cir. 1979), affg. in part and revg. in part 67 T.C. 426 (1976). Thus, we hold that petitioner's position in Knoxville was a temporary one and that petitioner was away from home in 1986 during which time he incurred deductible expenses under section 162(a)(2). *321 With respect to Mrs. Linetsky, we cannot arrive at the same holding. A husband and wife may have separate tax homes for purposes of section 162(a)(2), Foote v. Commissioner, 67 T.C. 1 (1976), and we must decide the "away from home" issue as to each. Petitioner has not presented sufficient evidence to show that Mrs. Linetsky's job in Hattiesburg, Mississippi, was temporary in nature. It was her first job after completing her college education. The fact that her employment suddenly terminated due to her employer's bankruptcy does not establish that the employment was temporary rather than indefinite or permanent at the time she was hired. Therefore, we hold that the vehicle expenses that Mrs. Linetsky incurred during her stay in Hattiesburg are not deductible, and the investment credit for her vehicle is not allowable. The Court has found that petitioner was "away from home" in 1986. Respondent does not dispute the amount of petitioner's traveling expenses, including meals and lodging, that is deductible under section 162(a)(2), $ 18,739. Respondent also concedes that petitioner is entitled to his vehicle expenses and the investment credit for *322 his vehicle. There is, however, a dispute as to which vehicle, vehicle 1 (the small pick-up truck) or vehicle 2 (the Pontiac Firebird), he used in 1986. Although petitioner testified that he used vehicle 2, the Court is satisfied that he was in error. During the audit, petitioner himself prepared for the Revenue Agent detailed statements of the expenses for himself and for his wife, including vehicle expenses (Exhibit H). That document lists the numbers of days and the mileage of the vehicle he used in his work in the various locations in the Knoxville area, a total of 34,000 miles, which was the mileage for vehicle 1, the small pick-up truck. The Court concludes that petitioner is entitled to deduct $ 6,449 for vehicle 1 expenses and is entitled to an investment credit of $ 432 for that vehicle. [6]
*323 Based on the foregoing, Decision will be entered under Rule 155. Footnotes
1. The parties have stipulated that petitioner is entitled to a dependency exemption for his stepsister in the taxable year 1986. Respondent concedes that, if this Court should hold that petitioner was "away from home" during the taxable year 1986, petitioner is entitled to the amounts for petitioner's meals, lodging, travel, and other expenses deducted on the 1986 return. Respondent also concedes that petitioner would be entitled to the investment credit claimed for his vehicle if he is found to have been away from home in 1986. There is no stipulation as to Mrs. Linetsky's expenses or investment credit, but apparently only her vehicle expenses and the investment credit for her vehicle were deducted on the return. As will be discussed later, there is a dispute as to which vehicle was used by her.↩
2. The divorce decree restored Mrs. Linetsky's maiden name, Lana Charitonova, but presumably her social security number would have remained the same.↩
3. Petitioner's employment contract with Consultants and Designers, Inc., did not contain a termination date and, to the best of his knowledge, such contracts never do. There was no commitment from either side in terms of duration of employment or specific assignments. The contractor at the job site would try to tell the employee the approximate duration of an assignment to the best of its knowledge, although the contractor could terminate or extend the employment at any time.↩
4. Respondent introduced the complaint and default judgment in the divorce to show that petitioner represented himself and his wife to be residents of Tennessee, not Illinois. That evidence does not indicate that petitioner made any legal assertions about his residence but merely indicated his mailing address. We do not think that petitioner consciously thought of the Federal tax law implications of telling his divorce attorney at the time of the divorce proceedings that he lived in Tennessee. Furthermore, whether petitioner was or was not a "resident" of Tennessee pursuant to Tennessee State law for purposes of obtaining a divorce is not conclusive as to the Federal tax law determination of petitioner's "tax home" for purposes of "away from home" deductions under sec. 162(a)(2)↩.
5. In Michaels v. Commissioner, 53 T.C. 269↩ (1969), the taxpayer's company initially assigned him to the Los Angeles area for only 1 year. The taxpayer rented his home in Seattle, Washington, and moved his family and part of their furniture from the Seattle house to Los Angeles. It was not until almost the end of that 1-year period that the taxpayer's company informed the taxpayer that it planned to establish a permanent office, and a permanent position for him, in Los Angeles. Shortly thereafter, the taxpayer purchased a home in Los Angeles, shipped his remaining furniture to the new home, and sold the Seattle house. We held that his employment in Los Angeles for that first year was temporary and allowed the claimed "away from home" expense deductions.
6. Vehicle 2, the Pontiac Firebird, was a new and more expensive vehicle, and the principal reason for the higher figures for that vehicle was the larger depreciation deduction and the larger investment credit based on that higher purchase price.↩