Charles F. Hoffman and Gloria L. Hoffman v. Commissioner.
Hoffman v. Commissioner
Docket No. 4426-68.
United States Tax Court
T.C. Memo 1971-120; 1971 Tax Ct. Memo LEXIS 207; 30 T.C.M. (CCH) 508; T.C.M. (RIA) 71120; May 27, 1971, Filed Joseph V. Di Rosa, Pere Marq. Bldg., New Orleans, La., for the petitioners. William O. Lynch, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1966 in the amount of $1,587.09. The issue for decision is whether petitioner is entitled to a deduction under section 162(a)(2), Internal Revenue Code of 1954, [1] for the calendar year 1966 for amounts expended for meals and lodging while he was away from El Centro, California, and, if so, the amount of deduction to which he is entitled. *208 Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners Charles F. Hoffman and Gloria L. Hoffman are husband and wife who resided in Metairie, Louisiana, at the time of the filing of their petition in this case. For the taxable year 1966 petitioners filed a joint Federal income tax return with the district director of internal revenue, New Orleans, Louisiana. In September 1957 Charles F. Hoffman (hereinafter referred to as petitioner) commenced working for General Adjusment Bureau, in Jonesboro, Arkansas, as an adjuster of insurance claims arising from storm damage. Petitioner's employment as a storm insurance claims adjuster continued until 1963 at which time because of a period of few storms occurring, General Adjusment Bureau had no storm claims for petitioner to adjust. In September 1963 petitioner went to work for H. C. Gibson Construction Company, Brawley, California (hereinafter referred to as H. C. Gibson), as a salaried employee. Petitioner prepared and presented insurance claims for his employer to insurance companies in addition to other general duties. Petitioner moved with his family to El Centro, California, and purchased *209 a home there for his family. During his employment with H. C. Gibson petitioner always considered his principal occupation to be that of a storm insurance claims adjuster. Petitioner expressed to his employer his intent to accept any storm adjusting work which became available. He maintained contact with General Adjustment Bureau and was on call with that company to do adjustment work should the need for storm claims adjuster develop. Petitioner was also on call with Paul R. White and Company, Inc. insurance adjusters in Houston, Texas, for work as a storm claims adjuster when the need for such adjusters arose. In September 1965 Paul R. White, the president of that company, contacted petitioner and requested his services as an adjuster in connection with expected claims which would arise from Hurricane Betsy. At that time "Betsy" was located in the Gulf of Mexico and was expected to strike the Houston area. Petitioner agreed to go to Houston, informed his employer, H. C. Gibson, of his decision and drove to Houston. By the time petitioner arrived in Houston, Hurrican Betsy changed course and struck the New Orleans area rather than Houston. Petitioner was informed that Paul R. White *210 had made arrangements for him to go to work in New Orleans, Louisiana, for Gould Adjustment Company, Inc. (hereinafter referred to as Gould). After spending one night in Houston, petitioner went to New Orleans and began to settle Hurrican Betsy damage claims for Gould on September 15, 1965. Petitioner was not reimbursed by Gould for his travel expense from California to New Orleans. While working for Gould, he was compensated on a commission basis. He was not reimbursed for any expenses incurred in the course of his claims adjustment work. Petitioner worked under the same arrangement with Gould as did approximately thirty other claims adjusters who came to work for Gould when Hurricane Betsy hit the New Orleans area. As the workload of storm claims decreased, Gould would release some of the adjusters called into to work on those claims. It was petitioner's understanding when he came to work for Gould that his work would be over when there were no more Hurrican Betsy damage claims assigned to him to conclude. He anticipated that this could be after several 510 months and that the maximum time to complete such work would be a year. Petitioner desired to continue adjusting storm *211 claims when the work on the Hurricane Betsy claims was concluded but had no understanding to this effect with anyone. He did have an understanding that he could return to work for H. C. Gibson when his work on Hurricane Betsy claims was completed if he was unable to find other work adjusting storm claims. In February or March of 1966 most of the Hurrican Betsy storm claims had been settled. At that time Gould offered petitioner the opportunity to continue his employment. The proposed employment arrangement called for petitioner to do the "clean-up" on the remaining Hurricane Betsy damage claims and to remain with Gould on a permanent basis. [2] Petitioner informed Gould that he would have to return to California and consult his wife who was employed as a secretary in California about moving to New Orleans before he could act on this offer of employment. *212 Petitioner returned to his home in El Centro, California, in March 1966. After discussing Gould's offer with his wife, petitioner returned to New Orleans and accepted that offer. Petitioner remained employed by Gould until the latter part of 1969 when he obtained a stock interest in another company and commenced working for that company. On November 17, 1966, petitioner moved his wife and household goods from El Centro, California, to Metairie, Louisiana. On his 1966 Federal income tax return petitioner claimed a deduction of $7,600 for travel expense while away from his home in El Centro, California, in the pursuit of his trade or business as a storm insurance claims adjuster. The deduction in the amount of $7,600 covered the number of days petitioner was in New Orleans between January 1 and November 16, 1966, and was computed by petitioner by multiplying that number of days, 304, by an estimated living expense of $25 per day. Respondent in his notice of deficiency disallowed the $7,600 claimed deduction for travel expense while away from home stating that New Orleans, Louisiana, constituted petitioner's tax home in 1966 while he was working for the Gould Adjustment Company. *213 In the alternative, respondent disallowed $1,792.86 of the claimed deduction on the ground that petitioner had failed to establish that any amount in excess of $5,807.14 represents an ordinary and necessary business expense for the year 1966 or was expected for the purpose designated. Ultimate Finding of Fact Petitioner was in the trade or business of storm insurance claims adjusting notwithstanding the fact that he had taken other interim employment. Petitioner's employment with Gould Adjustment Co., Inc., in New Orleans, Louisiana, was initially of a "temporary" nature. On or about March 15, 1966, petitioner accepted a position with Gould which made his employment of an "indefinite" or "indeterminate" nature. Opinion Section 162(a)(2)[3] provides for the deduction of all ordinary and necessary expenses paid or incurred in carrying on a trade or business, including meals, lodging and other traveling expenses while away from hime order for a taxpayer to be entitled to a deduction under this section of the statute the expense must be (1) "a reasonable and necessary traveling expense", (2) "incurred 'while away from home'", and (3) "incurred in pursuit of business." Commissioner v. Flowers, 326 U.S. 465, 66 S.Ct. 250 (1946). *214 Except as to a relatively small portion of the deduction claimed by petitioner as hereinafter discussed, respondent does not contend that petitioner did not in 1966 expend the amount claimed to be deductible for ordinary and necessary living expenses in New Orleans. 511 Respondent's position insthat in 1966 petitioner was not away from "home" as that term is used in the statute and that if he were away from "home" within the meaning of the statute he was not away "in pursuit of business."[4] Both of respondent's contentions are based on his interpretation of the facts with which interpretation we do not agree. Respondent argues that the facts show that petitioner in September 1965 resigned from his permanent employment in California and *215 accepted employment in New Orleans which was indefinite as to duration. So interpreting the facts, respondent states that in accordance with our holding in Emil J. Michaels, 53 T.C. 269, 273 (1969) and cases there cited petitioner's "tax home" was at his place of employment in California until September 1965 and that in September 1965 his "tax home" became New Orleans.
In the Michaels case (at page 273), we stated that "we have consistently held that 'home' in Section 162(a)(2) means the taxpayer's principal place of employment." This definition of "home" is apparently not accepted by the Circuit Court of Appeals for the Fifth Circuit to which an appeal in this case would lie. That Court apparently considers a taxpayer's "home" within the meaning of section 162(a)(2) to be where he customarily *216 resides. See Steinhort v. Commissioner, 335 F. 2d 496, 505 (C.A. 5, 1964) affirming a memorandum opinion of this Court in which the Fifth Circuit refers to this Court "equating 'home' with principal place of work" and "the 8th-9th-5th Circuit view" that "'home' is home." If the determination of the issue in the instant case was dependent upon whether petitioner's "home" was his "principal place of employment" or the place where he "customarily resides" we would be required to determine precisely the holding of the Fifth Circuit in this respect and apply that holding here. See Jack E. Golsen, 54 T.C. 742 (1970) on appeal (C.A. 10, May 4, 1970). However, in this case it is unnecessary for us to elect between the two definitions of "home". Under either definition petitioner's "home" was in California in September 1965 when he received the call to come to the Gulf Coast to adjust Hurricane Betsy claims. In our view under either definition of "home" petitioner's "home" remained in California until March 1966 when he accepted permanent or indefinite employment with Gould in New Orleans. Under either definition of "home" a taxpayer's "home" does not change because *217 of "temporary" employment at a location to which he does not move his family residence. See Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958); Emil J. Michaels, supra.Laurence P. Dowd, 37 T.C. 399 (1961). However, once a taxpayer accepts indefinite or indeterminate employment, he is not entitled to deduct his living expenses at the location of that employment whether or not he moves his family residence. Peurifoy v. Commissioner, supra; Flowers v. Commissioner, supra; Hammond v. Commissioner, 213 F. 2d 43 (C.A. 5, 1954) affirming 20 T.C. 285 (1953), Claunch v. Commissioner, 264 F. 2d 309 (C.A. 5, 1959) affirming 29 T.C. 1047 (1958). In Emil J. Michaels, supra, we held that a taxpayer employed by a corporation in Seattle could deduct his living expenses while on a one-year assignment in Los Angeles. We determined that the one-year assignment was "temporary". In that case we stated (53 T.C. at page 273) that a "taxpayer's principal place of work is not his 'home' for the purposes of section 162 (a)(2) when his employment there is only 'temporary' as distinguished *218 from 'indefinite' or 'indeterminate'." In the instant case we have found as a fact from the evidence that until the middle of March of 1966 petitioner's employment in New Orleans was temporary but that after petitioner accepted Gould's offer to do the cleanup work on the Hurricane Betsy claims and to remain with Gould on a permanent basis, his employment became indefinite or indeterminate. When petitioner first accepted work in New Orleans adjusting Hurricane Betsy claims his employment was temporary since it was "the sort of employment in which termination within a short period could be foreseen." Beatrice Albert, 13 T.C. 129, 131 (1949). Petitioner left his employment in California with H. C. Gibson with the understanding that he could return to that work if he could not find other work as a storm claims adjuster when his work on Hurricane Betsy claims was completed. Until petitioner's 512 employment ceased to be temporary he was away from home in pursuit of business within the meaning of section 162(a)(2) and, therefore, entitled to deduct his expenses for meals and lodging for this period. Peurifoy v. Commissioner, supra; Laurencep. Dowd, supra; *219 Hollie T. Dean, 54 T.C. 663 (1970). We have found from the facts in this record that petitioner accepted employment with Gould which was indefinite or indeterminate in March of 1966. While it is difficult to determine from the record the exact date when petitioner's employment ceased to be temporary, considering the evidence as a whole we have concluded that March 15, 1966 was that date and that he is entitled to deduct his living expenses in New Orleans from January 1 to March 15, 1966 but is not entitled to deduct any such expenses after March 15, 1966. Petitioner claims that he is entitled to deduct $25 a day since that is "about average" for living expenses away from home for a storm claims insurance adjuster. Respondent determined that petitioner's total expenditures for living expenses in New Orleans for the 304 days he was in New Orleans before his family moved to that city to be $5,807.14, which would be a little over $19 a day. Petitioner's only justification for his claim for a deduction of $25 a day is that sometimes he spent more than $25 a day and sometimes he spent less so he believed that $25 a day was a "medium estimate" of his expenses. This testimony *220 is insufficient to show error in the amount determined by respondent to be the ordinary and necessary expenses of petitioner for living in New Orleans in 1966. There is no showing of how respondent reached the amount of expenses he determined and therefore we conclude that the amount which petitioner is entitled to deduct for living costs for the 74 days he was temporarily employed in New Orleans in 1966 should be computed on the basis of 74/304 of $5,807.14. Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. There is some confusion in the testimony as to when this offer was made to petitioner. However from the record as a whole and particularly considering petitioner's statement that his son had several months remaining in the school year when the offer was made and the fact that the moving expenses claimed deductible on the 1966 income tax return show that petitioner's family moved to New Orleans in November, 1966, we have concluded that this offer was made to petitioner as he first testified in February or March 1966.↩
3. SEC. 162. TRADE OR BUSINESS EXPENSES. (A) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and↩
4. At trial respondent appeared to be contending that petitioner was no longer in the trade or business of being a storm claims insurance adjuster in 1965. On brief respondent makes no such contention. In any event this record supports the conclusion that petitioner never abandoned storm claims adjusting as his trade or business. Harold Haft, 40 T.C. 2↩ (1963).