WILLIAM A. EISAMAN and HELEN M. EISAMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Eisaman v. Commissioner
Docket No. 4427-74.
United States Tax Court
T.C. Memo 1978-407; 1978 Tax Ct. Memo LEXIS 108; 37 T.C.M. (CCH) 1692; T.C.M. (RIA) 78407; October 11, 1978, Filed *108 Held: Petitioner's assignment by his employer, General Electric Corp., from its Syracuse, N.Y., plant to the New Orleans area to check the sonar systems of ships being constructed by Avondale Shipyards, Inc., was not temporary and the New Orleans area was petitioners' tax home during the assignment. Petitioners are not entitled to deduct "away from home" expenses. William A. Eisaman, pro se. Anthony Bruce, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined deficiencies in petitioners' income tax as follows: Year
Deficiency
1969 $ 241.90
1970
1,446.80
1971
1,406.11
The sole issue presented in this case is whether petitioner William A. Eisaman was "away from home" within the meaning of section 162(a)(2), I.R.C. 1954, [1] during the taxable years at issue thereby permitting deductions for expenditures for food, lodging, and other personal items. FINDINGS OF FACT The stipulated facts are so found. William A. Eisaman and Helen M. Eisaman (hereinafter referred to as William or the petitioners) resided in Liverpool, N.Y., at the time they filed their petition in this case. Petitioners filed their 1969 income tax return, their 1969 amended income tax return, and their 1970 income tax return with the Southwest Service Center, Austin, Tex. They filed *110 their 1971 income tax return wit the North-Atlantic Service Center, Andover, Mass.
During the taxable years at issue William was employed by General Electric Corp. (hereinafter G.E.) as a filed representative for G.E.'s sonar filed programs. On February 11, 1969, G.E. and Avondale Shipyards, Inc. (hereinafter Avondale), located near New Orleans, La., entered into a contract which required G.E. to provide qualified service personnel to check the sonar systems of certain ships Avondale was constructing. The duration of the contract was estimated to run from February 11, 1969, until May 25, 1973. It was understood, however, that disruptions in the schedule would occur and that flexibility in the scheduled performance of the sonar systems checks would be necessary. William was assigned by G.E. from G.E.'s Syracuse, N.Y., plant to the New Orleans area pursuant to the Avondale contract. His duties were to commence on February 11, 1969, but illness delayed his starting date until early April 1969. Petitioners lived in Baldwinsville, N.Y., when William was assigned to work on the Avondale project. Upon assignment petitioners rented their home in Baldwinsville for an unspecified *111 length of time and moved with their children to Harvey, La., in the New Orleans vicinity. An apartment was leased by them for 1 year after expiration of which the term became month to month. William worked for G.E. at Avondale from early April 1969 through January 6, 1972. He was then reassigned to Newport, R.I., because the field representative in Newport became ill. His family moved with him to Newport. While assigned to Avondale, G.E. sent William on one interim assignment in 1970 and one interim assignment in 1971. The expenses for the assignments, each of which lasted approximately 1 month, were paid by G.E. Upon termination of these assignments William returned to Avondale. Also while assigned to Avondale, William was required to be on shipboard during sea trials for additional testing of ships and pursuant to this requirement was on approximately nine sea trials in each year, each with an average duration of 4 to 5 days. While on these sea trials, G.E. paid William only an amount of money sufficient to pay the rent on the apartment where he and his family were living, and these amounts were included in his W-2s and reported on his returns. William's attendance *112 at these sea trials was an "other absence," the payment of expenses for which was governed by the following excerpt from G.E.'s manual: Expense Status While on Vaction, R&R or Other Absence
Expenses are not allowed during vacation, R&R, or other absence. However, if the employee must return to the same location after the absence, and it is not feasible to vacate his quarters during the absence, a charge (accompanied by receipts) for holding his quarters may be submitted. Petitioners paid income taxes to the State of Louisiana during the entire time they resided in Louisiana. They paid no income tax to the State of New York during this time. They established checking and savings accounts in Harvey. They did not retain any bank accounts in Baldwinsville after the move to Harvey. They also obtained credit cards from department stores, registered their car in Louisiana, and obtained Louisiana driver's licenses. During each of the taxable years at issue G.E. paid William "per diem," which was included in the Forms W-2 issued to him, and which was reported as income on the respective returns for each year. G.E.'s manual relating to field programs sets forth the criteria *113 for withholding on per diem payments as follows: All per diem is treated as taxable income, but whether per diem payments are subject to withholding depends on whether the tour of duty in a project area is classified as extended or temporary. 1. If the tour of duty is extended (substantially a one year period), the per diem payments will be included in the paycheck as part of the Gross dollars.
2. If the tour of duty is temporary, the per diem payments will not be subject to withholding tax and, therefore, will be included in the paycheck as part of the Net dollars. [2]
All per diem payments made by G.E. to William were made pursuant to substantiation of the actual underlying expenses submitted by William to G.E. G.E. withheld tax on a substantial portion of the per diem paid to William during the taxable years at issue. On their original return for 1969 petitioners claimed a deduction for the expenses of moving to Harvey from Baldwinsville pursuant to section 217. They also claimed a deduction for "out of town expenses in excess of amount allowed (amt. all'd. incl. in wages)" of $ 1,054. On the amended *114 return filed for 1969 petitioners increased the amount of this deduction by $ 3,260 for a total of $ 4,314. On petitioners' returns for 1970 and 1971, $ 6,321.53 and $ 6,653.15, respectively, was deducted as employee business expenses incurred while away from home. All of the deductions claimed on the returns as employee business expenses while away from home were for William's expenses only. The notice of deficiency disallowed these deductions, explaining: It is held that the New Orleans * * * area constituted your home for tax purposes while you were working for the General Electric Company in that area, and that you did not incur travel expenses away from home within the meaning of section 162. * * * OPINION Section 162(a)(2) provides: (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *. The only issue in this *115 case is whether William was "away from home" as that phrase has been construed by case law during the time he was testing sonar systems for G.E. in Louisiana. If he was away from home he is entitled to the deductions claimed on petitioner's returns for the taxable years at issue. But if not, the expenditures for which the deductions are claimed are personal expenditures nondeductible under section 262. [3]
This Court has defined "home" in section 162(a)(2) as being the taxpayer's principal place of employment. However, we also have held that the taxpayer's principal place of employment is not his home for tax purposes when his employment there is only temporary as distinguished from indefinite. Michaels v. Commissioner,53 T.C. 269, 273 (1969); Jones v. Commissioner,54 T.C. 734, 740 (1970), affd. 444 F. 2d 508 (5th Cir. 1971). Whether a particular assignment is temporary or indefinite is a question of fact with consideration being given to whether the type of employment *116 is such that its termination within a short time could be foreseen as well as to the actual duration of such employment. Cockrell v. Commissioner,38 T.C. 470, 479 (1962), affd. 321 F. 2d 504 (8th Cir. 1963); Verner v. Commissioner,39 T.C. 749, 753 (1963). Petitioner argues that his permanent principal place of employment was in New York and that since the G.E.-Avondale contract specified a reasonably definite period of time, his assignment at Avondale was not indefinite but was temporary so that his tax home remained in New York. This ignores the meaning prescribed by the courts to the word "temporary" in deciding whether a taxpayer's tax home is his principal place of employment or the home base of his employer from which he has been assigned. As mentioned above, temporary employment in that context means that termination within a reasonably short period of time can be foreseen. Verner v. Commissioner,supra.Even if it is known that a particular job may or will terminate at some future date, that job is not "temporary" if it is expected at its inception to last for a substantial or indefinite period of time. *117 Jones v. Commissioner,supra.The basic purpose of the "away-from-home" provision is to mitigate the burden of the taxpayer who is required by the exigencies of his job to maintain two places of abode, thereby incurring duplicate living expenses. Kroll v. Commissioner,49 T.C. 557, 562 (1968). The underlying philosophy in the use of the temporary-indefinite test to determine where the taxpayer's tax home is, and thus whether he is "away from home," is that if the anticipated length of the "temporary" job is so short that the taxpayer could not reasonably be expected to move his home and family to that jobsite, he should be entitled to deduct his duplicated living expenses. On the other hand, if the assignment is of such an extended or indefinite duration that the taxpayer could reasonably be expected to move his home and family to the jobsite, the exigencies of his job do not cause duplication of his living expenses, see Ford v. Commissioner,227 F. 2d 297, 299 (4th Cir. 1955), affirming T.C. Memo. 1954-209, and he is not entitled to deduct what would normally be nondeductible personal living expenses. The answer *118 to this question must be determined by the Court from all the facts and circumstances in each case. In this case it is clear that at its inception William's assignment to Avondale would not be considered temporary within the above meaning.Termination within a reasonably short period of time could not be foreseen. The contract between G.E. and Avondale forecast a minimum term of 3 years and 3 months. Without evidence of the arrangement between G.E. and William regarding the Avondale contract, we are unable to ascertain whether it was intended from the outset that William stay in Louisiana until the contract was completed. Inferentially, however, it was intended. He was assigned to Avondale at the commencement of the contract although illness prevented him from assuming his duties until April 1969. Because the per diem received by William was subject to withholding and because he rented an apartment in Harvey for 1 year, William was aware that he would be in Louisiana for at least 1 year. The fact that he went to the trouble and expense of moving his entire family and bank accounts to Louisiana and obtained Louisiana car registration and licenses indicate that he expected his *119 assignment there to be lengthy. In fact William and his family lived in Louisiana for approximately 2 years and 10 months. His two interim assignments each lasted approximately 1 month. Although William intimated at trial that he did not know at the conclusion of these assignments whether he would be reassigned to Avondale, he was reassigned to Avondale, and he testified that he anticipated remaining in Louisiana until completion of the contract after the last interim assignment. His reassignment to Newport, R.I., prior to completion of the Avondale contract was caused by the illness of G.E.'s field representative in Newport. Although the absence of duplicated expenses is not determinative of this issue, Michaels v. Commissioner,53 T.C. 269, 275 (1969), the fact that William did move his family to Louisiana and avoided duplication of living expenses is another factor which supports our conclusion. [4]
We are not persuaded by the facts in this case that *120 William's assignment to Louisiana should be considered temporary. We believe it is apparent from the record before us that William's principal place of employment became Louisiana upon his transfer there and consequently he was not "away from home" during that assignment. Respondent's adjustments of deductions for medical expenses resulting from the increases in adjusted gross income are also approved. Consequently, respondent's determination as set forth in his notice of deficiency is upheld. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue, unless otherwise specified.↩
2. Emphasis in the original.↩
3. Sec. 262 provides that "Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses."↩
4. The fact that a taxpayer does take his family with him on a job assignment does not necessarily mean that the job is not temporary. See Michaels v. Commissioner,53 T.C. 269↩ (1969).