T.C. Memo. 2017-99

UNITED STATES TAX COURT

KATRINA E. TAYLOR AND AVERY TAYLOR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8965-15.                                  Filed June 1, 2017.

Katrina E. Taylor and Avery Taylor, pro sese.

<u>Deborah Aloof</u> and Bradley Hiller Bentley (student), for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  With respect to petitioners' Federal income tax for 2012,

the Internal Revenue Service (IRS or respondent) determined a deficiency of

$13,885 and an accuracy-related penalty of $2,777 under section 6662(a).[1]  The

---

[1]All statutory references are to the Internal Revenue Code (Code), in effect
(continued...)

[*2] issues for decision are whether petitioners are entitled to deduct car and truck expenses reported on their Schedule C, Profit or Loss From Business, and whether they are liable for an accuracy-related penalty. We resolve both issues in respondent's favor.

FINDINGS OF FACT

The parties filed a stipulation of facts with accompanying exhibits that is incorporated by this reference. Petitioners resided in West Virginia when they filed their petition.

During 2009-2011, the three years preceding the tax year in issue, petitioner husband, Avery Taylor, operated as a sole proprietorship AW Recycling, a recycling business. He transported products intended for recycling using a specialized truck. Petitioners reported the income and expenses of this business on Schedules C. For 2009 they reported gross profit of $3,590 and a net loss of $51,482; of their reported expenses, $43,989 represented car and truck expenses. For 2010 they reported gross profit of $11,360 and a net loss of $65,375; of their reported expenses, $56,244 represented car and truck expenses. For 2011 they reported gross profit of $2,120 and a net loss of $93,982; of their reported expenses,

---

[1](...continued)
for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

**[*3]** $91,647 represented car and truck expenses. Petitioner wife, Katrina Taylor, testified that the AW Recycling business terminated in 2012.

During 2009-2011 Mrs. Taylor allegedly also operated a billing services business called Long-Term Care Billing Solutions (LTC). She testified that she sought out healthcare providers, mainly nursing homes and hospitals, and offered to review their customer accounts. She allegedly proposed to prospective clients that, if she collected on any past-due accounts, they would pay her a percentage of the amount collected.

Mrs. Taylor testified that she began her LTC activity in 2009 and continued it through 2014. But petitioners did not include with their 2009, 2010, or 2011 return a distinct Schedule C for the LTC activity. Rather, Mrs. Taylor testified that she included LTC's income and expenses, consisting mostly of alleged car and truck expenses, on the Schedules C for AW Recycling. Those Schedules C did not indicate which income and expenses were attributable to which business.

Petitioners timely filed their 2012 Federal income tax return, reporting $96,735 of taxable wages attributable chiefly to Mrs. Taylor's full-time employment at the Jefferson Memorial Hospital. They included in this return a Schedule C for LTC that reported zero gross receipts and total expenses of $75,968, including $74,373 of car and truck expenses. After taking into account that $75,968 net

**[*4]** loss, the standard deduction, and personal exemptions, petitioners' 2012 return showed zero income tax liability and claimed an earned income tax credit (EITC) of $5,891 and an additional child tax credit of $2,665.

The IRS selected petitioners' 2012 return for examination. It disallowed the deduction for car and truck expenses on the grounds that petitioners had failed to substantiate these expenses and that the expenses (if substantiated) would constitute nondeductible startup costs of a new business. After increasing petitioners' net income to reflect this disallowance, the IRS determined an income tax liability of $5,437. As a corollary of these adjustments, the IRS decreased petitioners' EITC and additional child tax credit to zero. On February 20, 2015, the IRS sent petitioners a timely notice of deficiency for 2012 that determined a deficiency of $13,885 and an accuracy-related penalty of $2,777. Petitioners timely sought redetermination in this Court.

OPINION

The IRS' determinations in a notice of deficiency are generally presumed correct, though the taxpayer can rebut this presumption. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners do not contend that the burden of proof should shift to respondent under section 7491(a) and, if they had advanced this contention, it would lack merit. They thus bear the burden of proof.

**[*5]** Deductions are a matter of legislative grace. The taxpayer bears the burden of proving that reported business expenses were actually paid and were "ordinary and necessary." Sec. 162(a); Rule 142(a). Taxpayers bear the burden of substantiating the expenses underlying their claimed deductions by keeping and producing records sufficient to enable the IRS to determine the correct tax liability. Sec. 6001; INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), (e), Income Tax Regs. The failure to keep and present such records counts heavily against a taxpayer's attempted proof. Rogers v. Commissioner, T.C. Memo. 2014-141, 108 T.C.M. (CCH) 39, 43.

Section 274(d) imposes relatively strict substantiation requirements for deductions claimed for (among other things) "listed property." Under section 280F(d)(4) listed property includes any "passenger automobile." No deduction is allowed under section 274(d) unless the taxpayer substantiates, by adequate records or by sufficient evidence corroborating her own statements, the amount, time and place, and business purpose for each expenditure. Sec. 1.274-5T(a), (b), and (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

A.    Car and Truck Expenses

Because passenger automobiles constitute "listed property," petitioners' reported car and truck expenses are subject to the heightened substantiation require-

**[\*6]** ments described above.  See <u>Fernandez v. Commissioner</u>, T.C. Memo. 2011-216.  To satisfy these requirements, the taxpayer generally must keep a contemporaneous mileage log or a similar record, such as a diary or trip sheets, that substantiates the extent to which the vehicle was actually used for business rather than personal purposes.  See <u>Michaels v. Commissioner</u>, 53 T.C. 269, 275 (1969); <u>Flake v. Commissioner</u>, T.C. Memo. 2014-76; sec. 1.274-5T(c), Temporary Income Tax Regs., <u>supra</u>.  Lacking contemporaneous records, the taxpayer must produce other credible evidence sufficient to corroborate his or her own statements concerning business use.  Sec. 1.274-5T(a), (b), and (c), Temporary Income Tax Regs., <u>supra</u>.

Petitioners reported on their 2012 Schedule C car and truck expenses of $74,373.  At trial petitioners produced a spreadsheet showing mileage allegedly driven in four vehicles:  a 2006 Toyota Camry, a 2004 Cadillac Escalade, a 2003 Volkswagen Jetta, and a 2006 BMW.  Mrs. Taylor admitted at trial that none of these vehicles was used exclusively for business purposes in 2012.

We note initially that petitioners' trial evidence differed significantly from their tax reporting.  Petitioners attached to their 2012 return Form 4562, Depreciation and Amortization, on which they listed only two vehicles and reported that each was used 100% for business purposes.  On this Form 4562 they reported

**[*7]** 132,456 business miles, with 61,226 business miles driven by the first vehicle and 71,230 by the second. Their trial spreadsheet shows the same number of alleged business miles, 132,456, but divided among four vehicles rather than two.

Mrs. Taylor allegedly used the four vehicles to visit prospective clients and market her services by distributing a one-page promotional flier. She testified that, before 2012, she had sought clients chiefly in West Virginia. But in 2012 she allegedly attempted to expand her business by seeking clients in other States, including some as distant as Connecticut, New Jersey, and South Carolina.

The spreadsheets petitioners produced at trial purport to show that Mrs. Taylor during 2012 made 144 distinct trips between petitioners' residence in Martinsburg, West Virginia, and the prospective client sites. Each entry has a date, a destination, beginning and ending odometer readings, total miles driven, and a description of the work allegedly performed. In each instance the description of that work was identical: "Distribute Informational Brochures/Market."

For a variety of reasons we did not find these spreadsheets or Mrs. Taylor's testimony to be credible evidence. First, it is clear that these spreadsheets were not prepared contemporaneously with her alleged travel. She testified that she had recently created the spreadsheets using notes of beginning and ending odometer

[*8] readings that she had kept during 2012.  But she did not produce at trial either these notes or any other contemporaneous record of her travel.

Second, none of the spreadsheet entries shows the time she actually spent at any destination or the specific activity she performed there.  All that appears is the vague and generic phrase "Distribute Informational Brochures/Market," which was repeated for every one of the 144 alleged trips.  We find that this description does not constitute sufficient evidence corroborating her own statements as to the amount, time and place, and business purpose for each expenditure.  See sec. 274(d); sec. 1.274-5T(a), (b), and (c), Temporary Income Tax Regs., supra.

Third, we discern in these spreadsheets numerous internal inconsistencies that make them unreliable.  These include the following:

• On several occasions the ending odometer reading for a trip is higher than the beginning odometer reading for the next succeeding trip.  For example, the January 7 entry for the Camry shows an ending odometer reading of 156,572, but the subsequent entry on January 10 shows a starting odometer reading of 156,500.

• The number of miles allegedly driven, both on individual trips and collectively, seems obviously inflated.  The March 10 entry for the Camry shows that Mrs. Taylor drove 1,696 miles in a single day.  To accomplish this feat she would have had to drive at an average speed of 70 miles per hour for 24 consecutive

[*9] hours while still squeezing in time for rest stops and a client meeting. On other days she allegedly made one-day round trips of 1,613 miles, 1,606 miles, 1,604 miles, 1,584 miles, 1,583 miles, 1,391 miles, 1,387 miles, and 1,302 miles. The average length of her 144 alleged trips was 920 miles. We are not persuaded that Mrs. Taylor could have taken 144 full-day trips of this length while concurrently holding a full-time job at Jefferson Memorial Hospital.

• Many spreadsheet entries show significantly different mileage for round trips to the same destination. For example, the May 25 and June 1 entries for the Escalade show Mrs. Taylor's destination as Charleston, South Carolina. The first entry shows a round trip of 1,382 miles and the second shows a round trip of 1,583 miles. She could not explain the 200-mile difference.

• Many spreadsheet entries show vastly different mileage for trips to destinations within the same State. For example, entries for the Escalade show a 632-mile round trip to Absecon, New Jersey, and a 1,606-mile round trip to Mount Holly, New Jersey. Petitioner acknowledged that these New Jersey cities are not 500 miles apart.

• Finally, the spreadsheets frequently show multiple trips, a few days apart, to destinations in the same State. For example, during the 30-day period beginning May 26, entries for the Escalade show five round trips, each averaging more

**[\*10]** than 800 miles, to different destinations in New Jersey. During the six-week period beginning August 5, entries for the BMW show five round trips, each averaging more than 1,100 miles, to different destinations in South Carolina. To avoid wasting time and money, Mrs. Taylor presumably could have arranged to visit multiple prospective clients on a single trip. She had no plausible explanation as to why she did not do this.

Petitioners offered no credible evidence to explain these inconsistencies and improbabilities. Mrs. Taylor repeatedly asserted that her spreadsheets were accurate, but we are not obligated to accept such self-serving testimony. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Because petitioners have come up far short of meeting the strict substantiation requirements of section 274(d), we conclude that they are not entitled to deduct any of their reported car and truck expenses.[2]

---

[2]Respondent alternatively contends that any vehicle costs deemed substantiated would constitute nondeductible startup costs of a new business. See sec. 195(a) (requiring capitalization of costs incurred during startup period). In support of this contention, respondent notes that Mrs. Taylor reported no gross receipts for LTV for 2012 and could not establish that LTV (as opposed to AW Recycling) had any gross receipts during 2009-2011. Because petitioners have not come close to substantiating their reported car and truck expenses, we need not address respondent's alternative position.

**[*11]** B.     Penalties

The Code imposes a 20% penalty on the portion of any underpayment of tax attributable to "[n]egligence or disregard of rules or regulations" or "[a]ny substantial understatement of income tax." Sec. 6662(a) and (b)(1) and (2). Negligence includes "any failure to make a reasonable attempt to comply" with the internal revenue laws. Sec. 6662(c). An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A). Under section 7491(c) respondent bears the burden of production with respect to the liability of an individual for any penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). No penalty is imposed with respect to any portion of an underpayment if the taxpayer acted with reasonable cause and in good faith with respect thereto. Sec. 6664(c)(1). The taxpayer bears the burden of proving reasonable cause and good faith. Higbee, 116 T.C. at 446-447.

Respondent has met his burden of production with respect to petitioners' negligence and disregard of rules and regulations. Petitioners claimed nearly $75,000 of deductions for which they had wholly inadequate substantiation. The mileage spreadsheets they offered were not prepared contemporaneously, and many of the entries were internally inconsistent, improbable, and inflated.

**[*12]** Petitioners have not demonstrated that these failures were due to reasonable cause.

We find that the entirety of petitioners' underpayment for 2012, $13,885, was attributable to negligence. Because the tax liability reported on their return was zero, petitioners' understatement of income tax exceeds $5,000, which is greater than 10% of the tax required to be shown on the return, $13,885. Thus, the underpayment is alternatively attributable to a substantial understatement of income tax for which they have not shown reasonable cause.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.