T.C. Memo. 2019-109

UNITED STATES TAX COURT

SURESH HATTE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13738-18.                    Filed August 28, 2019.

Suresh Hatte, pro se.

<u>Stephen C. Welker</u> and <u>Bartholomew Cirenza</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  With respect to petitioner's Federal income tax for 2014 and 2015, the Internal Revenue Service (IRS or respondent) determined deficiencies and accuracy-related penalties under section 6662(a) as follows:[1]

---

[1]All statutory references are to the Internal Revenue Code in effect for the
                                                            (continued...)

[*2]

| Year | Deficiency | Penalty |
|------|-----------|---------|
| 2014 | $14,266 | $2,853 |
| 2015 | 31,132 | 6,226 |

Most issues were resolved in a stipulation of settled issues submitted before trial. In his post-trial brief respondent conceded the accuracy-related penalties in light of the Court's Opinion in Clay v. Commissioner, 152 T.C. __ (Apr. 24, 2019), which was released shortly after this case was tried. The sole question remaining for decision is whether petitioner is entitled to deduct car and truck expenses reported on Schedule C, Profit or Loss From Business, for his real estate appraisal business. We resolve this issue in respondent's favor.

FINDINGS OF FACT

The parties filed a stipulation of facts with accompanying exhibits that is incorporated by this reference. Petitioner resided in Maryland when he filed his petition.

During 2014 and 2015 petitioner worked as a taxi driver and as a real estate appraiser in the Washington, D.C., metropolitan area. He reported income and expenses for these two businesses on separate Schedules C. For the taxi business,

---

[1](...continued)
years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*3] his Schedule C for 2014 reported gross profit of $12,413 and expenses of $8,125 for gasoline, oil, carwash, licenses, insurance, and supplies. He wound down his taxi business during 2014. For 2015 he reported gross profit of zero from the taxi business and expenses of $2,365, which resembled the expenses he had reported for 2014. He reported no mileage-based vehicle expenses on the Schedules C for his taxi business.

Petitioner's appraisal business was more robust. On his 2014 Schedule C for the appraisal business he reported gross profit of $111,610 and expenses of $95,176, including $45,153 of car and truck expenses. For 2015 he reported gross profit of $183,770 and expenses of $154,979, including $64,303 of car and truck expenses.

Petitioner owned three vehicles allegedly used in his appraisal business: a Ford Crown Victoria (his taxicab), a Honda Accord, and a Nissan Maxima. For 2014 he reported on Form 4562, Depreciation and Amortization, the following mileage on these vehicles:

| Type | Ford | Honda | Nissan | Total |
|------|------|-------|--------|-------|
| Business | 55,800 | 24,830 | -0- | 80,630 |
| Personal | 2,200 | 600 | -0- | 2,800 |

For 2015 he reported on Form 4562 the following mileage on these vehicles:

[*4]

| Type | Ford | Honda | Nissan | Total |
|------|------|-------|--------|-------|
| Business | -0- | 65,250 | 46,580 | 111,830 |
| Personal | -0- | 3,000 | 230 | 3,230 |

Petitioner calculated vehicle expenses for his appraisal business by multiplying the business mileage shown above by the applicable standard mileage rates. See Notice 2013-80, 2013-52 I.R.B. 821 ($0.56 per mile for 2014); Notice 2014-79, 2014-53 I.R.B. 1001 ($0.575 per mile for 2015). In addition to these mileage-based costs, he separately reported, on the Schedule C for his appraisal business, expenses for oil changes and carwash.[2]

The IRS selected petitioner's 2014 and 2015 returns for examination. It disallowed all deductions for car and truck expenses related to his appraisal business on the ground that he had not adequately substantiated them. On May 2, 2018, the IRS sent petitioner a timely notice of deficiency, and he timely sought redetermination in this Court.

At trial petitioner testified that extensive driving was required for his appraisal business. He said that he conducted this business from a friend's house in

---

[2]Petitioner's Schedules C for the appraisal business reported expenses of $32,000 and $51,200 for "contract labor" for 2014 and 2015, respectively. These amounts were apparently paid to Muktayi Hatte, who shared a home (and a last name) with petitioner. Although Ms. Hatte is listed as his spouse on an insurance policy, he testified that the two were not married and that she was a friend who helped him by visiting appraisal sites and preparing documents.

[*5] Silver Spring, Maryland, and that he commuted there almost daily from his residence in Hyattsville, Maryland. He did not keep contemporaneous mileage logs or other records of the mileage he drove for the appraisal business. Rather, he created spreadsheets during the IRS examination by using Google maps to calculate the round-trip distance from Silver Spring to each of his alleged destinations. There is no evidence showing where petitioner actually started each trip, and the spreadsheets do not show which vehicle was used for any of the travel.

According to petitioner's spreadsheet for 2014, he visited at least one appraisal site every day but one between January and October, with no trips in November or December. The spreadsheet for 2015 shows a substantially identical pattern. Many of these alleged trips were repeat visits to the same property. Petitioner testified that repeat trips were often necessary because the realtor failed to show up, the customer canceled and rebooked, or the exterior lighting was too poor for him to take photographs. We did not find this testimony credible.

Petitioner testified that the Honda was the primary vehicle he used for his appraisal business. During 2014 he allegedly used the Ford (his taxicab) to visit appraisal sites in between trips with taxi customers. He testified at trial that he

**[\*6]** discarded the Nissan in 2015 and reported no miles on it, but his return clearly shows otherwise.

OPINION

The IRS' determinations in a notice of deficiency are generally presumed correct, though the taxpayer can rebut this presumption. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner does not contend that the burden of proof should shift to respondent under section 7491(a); had he advanced this contention, it would lack merit. He thus bears the burden of proof.

Deductions are a matter of legislative grace. The taxpayer bears the burden of proving that reported business expenses were actually paid and were "ordinary and necessary." Sec. 162(a); Rule 142(a). The taxpayer bears the burden of substantiating the expenses underlying his claimed deductions by keeping and producing records sufficient to enable the IRS to determine the correct tax liability. Sec. 6001; INDOPCO v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), (e), Income Tax Regs. The failure to keep and present such records counts heavily against a taxpayer's attempted proof. Rogers v. Commissioner, T.C. Memo. 2014-141, 108 T.C.M. (CCH) 39, 43.

Section 274(d) imposes relatively strict substantiation requirements for deductions claimed for (among other things) "listed property." Listed property in-

**[\*7]** cludes (with exceptions not relevant here) "any passenger automobile" and "any other property used as a means of transportation." Sec. 280F(d)(4)(A). No deduction is allowed under section 274(d) unless the taxpayer substantiates, by adequate records or by sufficient evidence corroborating his own statements, the amount, time and place, and business purpose for each expenditure. Sec. 1.274-5T(a), (b), and (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014, 46016 (Nov. 6, 1985); see sec. 1.274-5(j)(2), Income Tax Regs. (noting that a taxpayer using a mileage rate in lieu of actual costs is not relieved of the substantiation requirement).[3]

Because petitioner's three automobiles constituted "listed property," his reported car and truck expenses are subject to the heightened substantiation requirements described above. See Fernandez v. Commissioner, T.C. Memo. 2011-216. To satisfy these requirements, the taxpayer generally must keep a contemporane-

---

[3]A vehicle used in the trade or business of transporting persons or property for compensation generally is not classified as a "personal automobile." Sec. 280F(d)(5)(B)(ii). But as "property used as a means of transportation," such a vehicle will nevertheless constitute listed property unless "substantially all" of its use is connected to that trade or business. Id. para. (4)(C). For 2014 petitioner reported that 55,800 of the 58,000 miles driven on his Ford were related to his appraisal business; he therefore did not carry his burden of proving that "substantially all" of that vehicle's use was connected to his taxi business. The Ford was thus listed property during 2014 whether or not it is considered a personal automobile.

[*8] ous mileage log or similar record, such as a diary or trip sheets, that substantiates the extent to which the vehicle was actually used for business rather than personal purposes. See Michaels v. Commissioner, 53 T.C. 269, 275 (1969); Flake v. Commissioner, T.C. Memo. 2014-76; sec. 1.274-5T(c), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Lacking contemporaneous records, the taxpayer must produce other credible evidence sufficient to corroborate his or her own statements concerning business use. See sec. 1.274-5T(a), (b), and (c), Temporary Income Tax Regs., supra.

For a variety of reasons we did not find petitioner's spreadsheets or his testimony to be credible. He did not prepare these spreadsheets contemporaneously with (or near to the time of) his alleged travel. Rather, he created them several years later, during the IRS examination. He did not produce at trial any notes, calendars, or other contemporaneous documents to support the entries on the spreadsheets. Although he produced invoices associated with some of his appraisal work, these only cover January and February of 2014. It is implausible that he could have recalled the details of more than 600 trips so long after the fact.

Petitioner's testimony concerning the cars that he used at different times for his appraisal business contradicted the mileage reported on his returns. He testified that he discarded the Nissan in 2015 and reported no miles on it, but his return

[*9] clearly shows otherwise. And while he testified that he used the Ford primarily in his taxi business, he reported that 96% of the miles driven in that vehicle during 2014--55,800 miles out of 58,000--were connected with his appraisal business.

Petitioner's spreadsheet for 2014 shows entries for every single day--except one--from January through October, including holidays and weekends. His spreadsheet for 2015 likewise has daily entries from January through October. We find it implausible that petitioner drove for his appraisal business with such regularity. It is also peculiar that each spreadsheet shows daily entries for the first ten months of each year and no entries for the last two months. Petitioner testified that he visited appraisal sites during November and December but that the "mileage [for those trips] had been taken into consideration before." This statement constitutes an admission that the mileage shown for the earlier trips was inflated.

Petitioner's spreadsheets allege several trips that he could not possibly have taken. The record includes certificates showing that he completed at least five full-day continuing education courses during 2014-2015. On May 7, 2015, for example, he flew to Detroit, Michigan, to complete a seven-hour training course. His spreadsheet asserts that, on the same day, he made three trips totaling 334 miles to conduct appraisals in Maryland and Virginia. It is beyond implausible

[*10] that he flew to Michigan, completed a seven-hour course, flew back to Maryland, and then drove 334 miles to take photographs in the dark. The spreadsheets allege multiple appraisal trips on four other days on which he attended seven-hour continuing education classes in Maryland. On cross-examination he admitted that the mileage he recorded for those days could not possibly be correct.

During 2014-2015 petitioner reported on the Schedule C for his appraisal business aggregate expenses of $83,200 for "contract labor." See supra note 2. He testified that he paid these sums to an assistant who helped him (inter alia) by making visits to appraisal sites. His assistant did not testify. There is no evidence as to whether the spreadsheets included her trips or (if so) whether she used his car to make the journeys.

Although petitioner's spreadsheets calculate all round-trip mileage from Silver Spring, it is unlikely that his 600 alleged appraisal trips all originated there. He lived in Hyattsville and efficiency would surely have dictated starting certain trips from home. During 2014 almost 70% of his appraisal-related mileage was recorded for the Ford, his taxicab, which he supposedly used to visit appraisal sites between trips with taxi customers. If that is so, it is unlikely that those trips all began in Silver Spring.

**[*11]** Finally, petitioner's spreadsheets reveal many internal inconsistencies that make them unreliable. For example:

- On at least six occasions, the spreadsheets implausibly show two round trips to the same address on the same day. And some of these entries lack credibility for other reasons. On January 3, 2014, petitioner alleges that he made two trips--one of 34 miles and the other of 36 miles--to the same address in Hyattsville, Maryland. Since petitioner lived in Hyattsville, these numbers are highly suspect. And even if we assume that petitioner drove from Hyattsville to Silver Spring and then back to Hyattsville--and did so twice on the same day--the distance from Silver Spring to Hyattsville is less than 10 miles.

- On many occasions the spreadsheets show that petitioner made, on the same day, separate round trips to distant locations fairly close to each other. On June 12, 2014, for example, the spreadsheet asserts that he took separate round trips, each of 70 miles, to two addresses in Baltimore. We find it unlikely that petitioner drove from Silver Spring to Baltimore and back to Silver Spring, only to turn around and drive back to Baltimore.

- On back-to-back days in January 2015, the spreadsheet shows a 289-mile round trip to Cumberland, Maryland, and a 371-mile round trip to Oakland, Maryland. Cumberland is on the way from Silver Spring to Oakland. It is wholly im-

**[*12]** plausible that petitioner made separate trips of over six hours to these two destinations.

These examples only scratch the surface of the improbabilities that pervade petitioner's spreadsheets.  He offered no credible testimony or other evidence to support the mileage he claimed.  We have no doubt that he used one or more of his vehicles in his appraisal business.  But because vehicle costs are subject to the strict substantiation requirements of section 274(d), we are not at liberty to estimate his costs under Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  See Sanford v. Commissioner, 50 T.C. 823, 827-829 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969).  Given petitioner's failure to submit any credible substantiating evidence, we have no alternative but to sustain respondent's disallowance of his deductions for car and truck expenses in their entirety.

To reflect the foregoing,

Decision will be entered under

Rule 155.